George Starke, J.
In this nonjury case, a retailer is being sued by the plaintiff individually and as guardian ad litem of her two infant daughters, for both negligence and breach of warranty. All three claim personal injuries as a result of eating jam which allegedly contained foreign deleterious substance.
The plaintiff mother purchased the jam (a sealed jar) from the defendant.
In the absence of any proof that the defendant, as retailer, was negligent in any manner in the handling of the product from the time of its receipt to the time of sale, that branch of defendant’s motion seeking dismissal of the cause of action based on negligence is granted. The product was in sealed jars. The defendant was neither the manufacturer nor the packer.
The motions to dismiss the warranty actions of both infants as a matter of law on the ground that there is no contractual relationship between the infants and the defendant seller, pose a different and most significant issue which has not been squarely presented to the Court of Appeals since 1927 (Redmond v. Borden's Farm Prods. Co., 245 N. Y. 512): “May a child *35 recover for breach of warranty as a result of eating unwholesome food where the mother was the purchaser?”
The privity issue raised here is of broader significance than in Conklin v. Waldorf, Astoria Corp., decided by this court (5 Misc 2d 496), where the injured plaintiff (as here) was not the “ buyer ”, but the guest of her friend who paid the check, and it was likewise claimed that the privity element was lacking between the plaintiff and the defendant restaurant. Obviously, since store food sales by far exceed restaurant food sales and directly affect the rights of every individual as a consumer, as well as the rights of every retailer and manufacturer, the decision on the question presented here is of deeper impact and will have more general application.
The defendant (represented by one of the most noted and respected law firms in the country) strenuously argues that New York still observes the strict privity requirement. It is stoutly maintained that the infants cannot sue for breach of warranty in the absence of a contractual relationship between the infants and the defendant. It is claimed that “ there is no privity since the mother made the purchase ”, and the holding in Chysky v. Drake Bros. Co. (235 N. Y. 468 [1923]), that: There can be no breach of warranty unless there is privity of contract, still represents the law of this State, and has been followed in Redmond v. Borden’s Farm Prods. Co. (245 N. Y. 512, supra); Turner v. Edison Stor. Battery Co. (248 N. Y. 73 [1928]); Ryan v. Progressive Grocery Stores (255 N. Y. 388 [1931]); Gimenez v. Great Atlantic & Pacific Tea Co.(264 N. Y. 390 [1934]); Bourcheix v. Willow Brook Dairy (268 N. Y. 1 [1935]); Smith v. Hanson (228 App. Div. 634 [1929]); Zotto v. Merkel Bros. (229 App. Div. 793 [1930]); Block v. Empire State Doughnut Corp. (233 App. Div. 774 [1931]); Massey v. Borden Co. (265 App. Div. 839 [1942]); Hopkins v. Amtorg Trading Corp. (265 App. Div. 278 [1942]); Salzano v. First Nat. Stores (268 App. Div. 993 [1944]); Dickinson v. Sperling (158 Misc. 905 [1936]).
This court was greatly disturbed by the inanity of the strict application of the privity doctrine when the subject arose in the Waldorf case (5 Misc 2d 496, supra). As a result, the Waldorf case (supra) represents the first direct and concentrated judicial attack in New York upon the citadel of privity. The court was roused into investigating the entire privity problem far beyond the precise question in the case, and made an exhaustive research and study of the subject. That which went beyond the decisional need for the Waldorf case (supra) was submitted in the form of articles to the New York Law Journal and *36 appeared in its editorial columns on April 8 (p. 4, col. 1), 9 (p. 4, col. 1), 10 (p. 4, col. 1), 1957. The articles reviewed the modern trend, aspect and approach by courts in this State and other States, with the emphasis on the nonpurchaser consumer’s rights against the manufacturer as well as the dealer, for breach of warranty rather than in negligence.
In New York City, among subsequent decisions supporting the view and principles expressed in the articles, Mr. Justice Schwartzwald, in Welch v. Schiebelhuth (11 Misc 2d 312) permitted the plaintiffs, who were not the purchasers, to amend their complaints to allege breach of warranty against the retailer. The plaintiffs, who sought and obtained the amendment, were the husband of the purchaser and two guests — the husband’s brother and mother; and in another New York City case (May 28, 1957), Mr. Justice Mangan used the articles as the basis for permitting a plaintiff, who purchased a bar of candy from a retailer, to amend his negligence action against the manufacturer to breach of warranty, and to charge the jury accordingly (Lardaro v. M B S Cigar Corp., 10 Misc 2d 873).
On the other hand, there have been decisions to the contrary, such as the most recent one of Zampino v. Colgate-Palmolive Co. (10 Misc 2d 686 [April, 1958]), where the court used the language of the Chysky (235 N. Y. 468, supra) and Gimenez (264 N. Y. 390, supra) cases (p. 690): “A cause of action for breach of warranty rests on contractual relations and hence there is no warranty except to the person to whom the sale is made ”.
Since the Waldorf (5 Misc 2d 496, supra), Lardaro (supra) and Welch (supra) cases were not taken up on appeal, a state of confusion presently exists. It is hoped that, because the privity problem is of vital concern, the higher courts will clarify the legal atmosphere clouding the subject. As Lord Mansfield said: ‘ ‘ Lawyers and litigants are entitled to know where they stand as to what their rights are and what the law is.”
THE NEW YORK TREND
The court disagrees with the defendant’s interpretations of the Blessington (Blessington v. McCrory Stores Corp., 305 N. Y. 140) and Bowman (Bowman v. Great Atlantic & Pacific Tea Co., 284 App. Div. 663) cases (discussed later) and places a different construction on them as well as upon some of the earlier cases cited, such as the Ryan (255 N. Y. 388, supra) and Hopkins (265 App. Div. 278, supra) cases. In addition, the defendant has entirely overlooked the recent (1956) case of Mouren v. Great Atlantic & Pacific Tea Co. (1 N Y 2d 884). An analysis of these cases reveals a realization that thinking along strict *37 classical contractual lines will cause grave injustices and the courts have therefore strained wherever possible to find avenues of escape from the tenacious tentacles of privity.
Fortunately, the court finds that New York has in some respects discarded the requirement of privity altogether by finding makeweights to offset the illogical and unrealistic notion that a warranty does not run to a consumer unless the consumer paid the purchase price. While not rejecting it completely as other States have (California, Florida, Illinois, Iowa, Kansas, Louisiana, Michigan, Mississippi, Ohio, Oklahoma, Pennsylvania, Tennessee, Texas, Washington) New York has been liberal in discerning privity where less imaginative courts might not, and its findings have been warmly received even by those States which still cling to the strict privity requirement (Massachusetts, New Hampshire, New Jersey and Maryland).
The New York trend definitely indicates an enlightened movement toward the relaxation of the totally strict and unsound doctrine of privity (especially in food cases, since public health is involved). The court is therefore not confronted with the problem of whether stare decisis commands blind adherence to an outmoded doctrine which insofar as it rests on principle, fails in reason. And so the question is presented: “Is it
conceivable in this modern day and age that New York is frustrated by and bound to an archaic and senseless privity rule which bars an infant’s recovery where the mother purchases the unwholesome food?” If that be the law, it amounts to the court saying to the infant: “ You cannot recover for your injuries because you didn’t buy the food. Only the purchaser can sue because only the purchaser has privity with the seller. Therefore, your mother is the only one who can sue. And she can only sue for her own injuries, not for yours, because she was the buyer — even though you were both injured by eating the same unwholesome food, which she bought for both of you to eat.”
THE EFFECT OF THE AGENCY AND THIRD-PARTY BENEFICIARY DOCTRINES ON PRIVITY
We now turn to the appellate cases which represent judicial makeweights to offset the built-in inequity of the privity requirement.
In Bowman v. Great Atlantic & Pacific Tea Co. (284 App. Div. 663 [1954], supra, afifd. without opinion 308 N. Y. 780 [1955]), the Appellate Division (3d Dept.) held that the plaintiff, who was not the purchaser, was entitled to recover although her sister made the purchase. The court justified the finding by *38 employing the “household-fnnd” theory, namely, that the money with which the food was purchased came out of joint “household” funds and was used for joint “household” consumption food purchases.
Actually, the decision was based on the reasoning in the By an case (255 N. Y. 388 [1931], supra) where Chief Judge Cardozo was the first to skirt the strict privity requirement by holding that the husband might sue since the wife acted ás his ‘ ‘ agent ’ ’ in making the purchase.
The warranty right was therefore extended to the husband where the wife was the purchaser. The court presumed from the relationship of husband and wife that the husband furnished the money for -the purchase. Thus Chief Judge Cardozo fought artificiality with part truth.
A fortiori, it is fair to deduce from the Bowman (284 App. Div. 663, supra) and Ryan (255 N. Y. 388, supra) cases that where the buyer can be shown or presumed to have been the agent of the injured person in making the purchase, the non-buyer consumer may indeed recover for breach of warranty.
However, logic dictates that the third-party beneficiary doctrine is even more appropriate than the joint “.household” funds agency theory. Where the child’s money is not being used for the purchase, the mother is not actually acting as the child’s agent. In reality, she is making the purchase (executing the contract) for the child’s benefit.
The defendant disagrees with this court’s statement in the New York Law Jotirnal articles (supra) citing Blessington v. McCrory Stores Corp. (305 N. Y. 140 [1953], supra) —“ Today the benefit of an implied warranty of quality under the Sales Act has been extended by our Court of Appeals to an infant where the parent is the purchaser ” (“ Implied Warranties of Quality and Wholesomeness in the Sale of Food ”, N. Y. L. J., April 18,1957, p. 4, col. 2).
The defendant argues that this case is not authority for the proposition that an infant may recover in warranty where the mother purchases the food and that the' question of privity was not presented directly and squarely as such to the Court of Appeals; that the case involved one question and one question only, namely — “what statute of limitations applies to a breach of warranty action that the holding that the six-year contract Statute of Limitations applied to a warranty action is strong proof that the “ privity of contract ” rule is applicable.
In the Blessington case {supra) the plaintiff father as the administrator of his infant -son, sued the retailer for the boy’s death from burns when a ‘ ‘ cowboy -suit ’ ’ he was wearing came *39 in contact with a flame and ignited. The first cause of action was for breach of warranty against the retailer. Since more than three years had expired from the time the action accrued, the court dismissed the five negligence causes of action against the defendant and others. However, it held that a breach of warranty action on behalf of the infant would lie where the mother made the purchase, and that the six-year (contract) Statute of Limitations applied. It refused to dismiss the warranty action which alleged: ‘ ‘ The defendant sold the suit to the infant’s mother for the infant’s use.”
Since the court permitted the breach of warranty action to stand, the only possible conclusion to be drawn is that an infant obtains the warranty right where the mother purchases the product for the infant’s -use or benefit.
It is suggested that the court may have allowed the warranty action because it was obvious that the mother did not buy the “cowboy suit” for herself and that the retailer, at the time of the sale, therefore had knowledge that she was making the purchase for someone else’s benefit.
If we apply this reasoning, then the test would be whether the parent specifically discloses to a retailer that the purchase is being made for the benefit of the infant.
The court cannot conceive the law to be that in order for the nonbuyer consumer (the infant) to maintain a warranty action, it is necessary for the purchaser (the housewife) to disclose to the retailer at the time of the purchase of ordinary household foodstuffs (or of any goods for that matter) that she is not buying the goods for herself but for the benefit of her infant, a member of the family, a relative or even a guest who has been invited to partake of a meal.
The suggestion has also been made that the only reason the third party was permitted to sue for breach of warranty where the goods were purchased by someone else was because it was a death action and the court was emotionally moved thereby. The Blessington case (305 N. Y. 140, supra) was strictly a breach of warranty action. The father, as administrator, sued for personal injuries and pain and suffering during the infant’s lifetime. It definitely was not, the court distinctly said, an action under the death statute. At any rate, this court does not subscribe to that reasoning, because to do so would mean the Court of Appeals prescribed that “death” alone would be the determinative factor in deciding whether the nonbuyer consumer may sue for breach of warranty.
In allowing the warranty action to stand, the implications and unmistakable inferences are that the court did so either on the *40 agency theory or upon the third-party beneficiary doctrine, by presuming, as Chief Judge Cabdozo did in the Ryan case (255 N. Y. 388, supra) that the mother either acted as the infant’s “ agent ”, or that she purchased the article for the use and benefit of the infant. It does not appear whether the mother’s money or child’s money was used for the purpose of making the purchase. In either event, it should not make any difference. If it was the child’s money, the agency theory applies. If it was the mother’s money (which is more probable), then the third-party beneficiary rule applies. If it was the father’s money, then the mother acted as agent for the father in making a purchase for the benefit of a third party — the infant.
The effect of giving importance to the matter of determining “whose money was used ” and “who was the buyer (within the meaning of the statute) ” indicates the genuine unsoundness of the strict application of the privity rule and the strained effort to hurdle the privity barrier. It caused one writer (Prof. Miller of Syracuse, N. Y. State Bar Bull. Oct., 1952, p. 331) to properly remark: “Mental gymnastics may be required in answering the 'simple question, ‘ who was the purchaser ’? [In] Gimenez v. Gr. Atl. & Pac. Tea Co., 264 N. Y. 390, 191 N. E. 27 (1934), [the] wife, who went to the store, [was] deemed the purchaser irrespective of evidence that she lived with and was supported bv [the] husband; [in] Ryan v. Progressive Stores Inc., 255 N. Y. 388,175 N. E. 105 (1931), [the] wife who went to the store [was] deemed the agent of her husband who was rendered ill by the food; [in] Kurriss v. Conrad & Co., 312 Mass. 670, 46 N. E. 2d 12 (1943), plaintiff, who contracted dermititis from a dress she selected at a store but which she charged to her sister’s account, [was] deemed the purchaser; [in] Raymond v. J. R. Watkins Co., 184 F. 2d 925 (8th Cir. 1950), plaintiff, who gave the money to a friend to purchase shampoo direct from the manufacturer’s salesman, [was] deemed the purchaser.”
Prof. Miller’s query was answered by the Bowman (284 App. Div. 663, affd. without opinion 308 N. Y. 980, supra) and Blessington (305 N. Y. 140, supra) cases and the case of Mouren v. Great Atlantic & Pacific Tea Co. (1 N Y 2d 884 [1956], supra) where the Court of Appeals affirmed without opinion the Appellate Division decision (1 A D 2d 767 [1st Dept., 1956]) which had affirmed but modified the judgment by reducing the award.
In the Mouren case (supra) the trial court (McCullen, J.) held (139 N. Y. S. 2d 375 [1955]), that the implied warranty extended to the wife though the husband was the purchaser. The agency theory formed the basis of its nationale (p. 377):
*41 ‘ ‘ I find, as a matter of law that the implied warranty extended to the benefit of the plaintiff wife. See Bowman v. Great Atlantic & Pacific Tea Co., 284 App. Div. 663, 133 N. Y. S. 2d 904; Visusil v. W. T. Grant Co., 253 App. Div. 736, 300 N. Y. S. 652. ‘ [The recorded] cases are entirely in harmony with the general law of warranty, for there is no question that an undisclosed principal is a party to the contract and entitled to enforce its warranties. ’ [284 App. Div. 663,133 N. Y. S. 2d 906.] Kelly Asphalt Block Co. v. Barber Asphalt Paving Co., 211 N. Y. 68, 105 N. E. 88, L. R. A. 1915C, 256. In Hopkins v. Amtorg Trading Corp., 265 App. Div. 278, 38 N. Y. S. 2d 788, the Appellate Division in the First Department stated the petitioner John Hopkins, might be in a position to show the son who purchased the crabmeat was acting simply as his agent in making the purchase and that the cause of action accrued to the father, relying on Ryan v Progressive Grocery Stores, 255 N. Y. 388, 175 N. E. 105, 74 A. L. R. 339, and sent the case back for a new trial. In the Ryan case, the Court sustained the verdict in favor of the plaintiff. The first paragraph of the opinion reads as follows: ‘ Plaintiff, through his wife, who acted as his agent, bought a loaf of bread at the defendant’s grocery. The loaf had concealed in it a pin, which hurt the plaintiff’s mouth.’ ”
The memoranda decision (1 N Y 2d 884, 885) states: “ In the Court of Appeals defendant argued that a prima facie case had not been established; * * * and that, as a matter of law, plaintiff wife may not recover for a breach of warranty.” (Italics supplied.)
An examination of defendant’s brief reveals that the defendant presented this argument: There was no privity of contract between Alice (the wife) and the A. & P. and she cannot recover on a contract claim for breach of warranty (where the husband was the purchaser) ’ ’. In affirming, the Court of Appeals pierced the privity veil by employing either the agency or third-party beneficiary theories. If the wife’s funds or joint household funds were used, then the husband acted as “ agent ” for his wife. If the husband’s money was used, then he made the purchase for the benefit of his family consisting of Ms wife and infant (the infant was not injured). Again, common-sense justice outranks technicality. Whatever method of construction is used it seems apparent that the judicial concern is primarily with eroding away an artificial concept.
HISTORICAL BACKGROUND AND ERROR
Dissecting the Chysky (235 N. Y. 468, supra) and Gimenez (264 N. Y. 390, supra) cases reveals that the sole reason for *42 deeming privity an essential element in warranty cases is because the breach of warranty action is said to be based strictly on contract. The position is taken that the warranty is ex contractu and arises out of a contract for the sale of goods. Consequently, it is maintained that only those in contractual relationship with the seller may sue for breach of warranty and the benefit of the warranty is not extended to those who are not in privity with the seller.
" The fact of the matter is, however, that the breach of warranty action is a hybrid. It starts out contractually but in reality emanates from the failurm.to either perform a duty to provide food which is wholesome,(ordo carry out an implied representation that the food is wholesome. Thus, it is actually suis juris, a combined tort and contract action — commencing in contract and resulting in tort where the seller has violated his obligation and the tacit representation that the food is wholesome. The warranty is imposed by law, in the name of public health and public policy, and not because of any express or implied-in-fact understanding of the parties. (Prosser, The Implied Warranty of Merchantable Quality, 27 Minn. L. Rev. 117; James, Products Liability, 34 Texas L. Rev. 192; 2 Harper & James, Law of Torts, § 28.15 et seq.; 34 Ore. L. Rev. 59; 8 Vand. L. Rev. 149; 1 Williston on Sales [Rev. ed.], § 197.)
The fact that a warranty is a phase of a contractual arrangement does not mean that the warranty must be treated as having only contractual significance. In its last analysis, “ The word contract ’ indicates the source from which the obligation to act is derived, while the word ‘ tort ’ is used to indicate the wrongful act upon which liability is predicated.” (1 Street, Foundations of Legal Liability, p. xxix [1906].)
The implied warranty sounds in tort as well as in contract (41 Harv. L. Rev. 263; 29 Tale L. J. 762; 23 Calif. L. Rev. 621; 4 Fordham L. Rev. 299; 9 St. John’s L. Rev. 216; Void on Sales, p. 476). “ Whether the action be one on warranty or negligence, it comes to the same thing. It sounds in tort.” (Davis v. Williams, 58 Ga. App. 274, 278.)
Historically, there is no justification for the notion that privity of contract is essential to support an action for breach of an implied warranty. Originally the remedy for breach of such warranty was an action on the case for breach of an assumed duty, a tort action in the nature of deceit but in which scienter or intent to deceive did not have to be alleged. Warranty was viewed as a form of misrepresentation and the gravamen of the action was the warranty and not conscious deception. It was not until the development of assumpsit and its application *43 to warranty actions that warranty became accepted as contractual in character. The first court to allow recovery for breach of implied warranty in a contract action did so in 1778. Habitual resort thereafter to the contract remedy led to this misconceived insistance on privity of contract as a condition of such relief. (See Prosser, The Implied Warranty of Merchantable Quality, 27 Minn. L. Rev. 117 [1943]; Miller, 1ST. Y. State Bar Bull., Oct., 1952, p. 330; 29 B. U. L. Rev. 107 [1949]; Smith & Prosser, cases on Torts, p. 891 [1952]; 26 Fordham L. Rev. 589-593 [1957].)
It has been suggested that privity became a requirement only because the early cases happened to satisfy it. (21 Minn. L. Rev. 315, 323.) Another explanation is that assumpsit was more convenient because it permitted the addition of common counts for money “ had and received (18 Cornell L. Q. 445, 446.) Bean Prosser points out that the tort element in warranty furnishes a strong argument for extending implied warranties from the manufacturer to the ultimate consumer, in the absence of any privity of contract (27 Minn. L. Rev. 117, 119) and to hold that a warranty is strictly contractual is “ ‘ to speak the language of pure fiction’” (Prosser on Torts [2d ed.], p. 493 [1955]).
Prof. Williston, in his article “The Progress of the Law” (34 Harv. L. Rev. 741, 762 [1921]) says: “The difficulty in theory, however, which most courts seem to feel, that the liability of a warrantor is contractual, and, therefore, can only run directly between a purchaser and his immediate seller, does not seem impressive. A warranty is in many cases imposed by law not in accordance with the intention of the parties; and in its origin is enforced in an action sounding in tort, and based on the plaintiff’s reliance on deceitful appearances or representations rather than on a promise.”
Void on Sales (p. 476; 30 111. L. Rev. 398) states: “ A warranty obligation is not necessarily promissory but may often be independently imposed by law where found socially advantageous
Prof. Perkins states, in his article ‘ Unwholesome Food as a Source of Liability ” (5 Iowa L. Bull. 86, 96 [1919]): “If the right is limited to the vendee of the unwholesome food it is because of technicality rather than reason. The peculiar responsibility imposed upon the dealer of foods is a form of ‘ insurer’s liability ’. Because it happened by accident to go under the name of implied warranty, it has so far been limited in favor of the actual buyer (Italics supplied.)
The error, therefore, took place originally when the courts mistakenly considered breach of warranty strictly as a contract action and held, as the court did in 1842, in Winterbottom v *44 Wright (10 M. & W. 109) that the manufacturer, vendor or supplier of a chattel owes a duty of care only to the person or persons with whom he contracts. This case formed the basis of the privity requirement decisions in the Gearing (223 Mass. 257), Chysky (235 N. Y. 468, supra) and Gimenez (264 N. Y. 390, supra) cases. But consider that 88 years later a Texas court held, in Brown Cracker & Candy Co. v. Jensen (32 S. W. 2d 227 [Tex., 1930]; 9 Texas L. Rev. 620) that where plaintiff was poisoned by eating impure candy purchased from a retailer, the manufacturer was liable on three grounds — negligence, implied warranty or misrepresentation. The privity barrier was removed from both warranty and negligence.
And recently, in Rogers v. Toni Home Permanent Co. (167 Ohio St. 244 [1958]) the court held that it was a mistaken notion that the term “warranty” implies a contractual relationship only. This idea, the court stated, was without historical foundation, for originally an action for breach of warranty was but an expansion of trespass on the case to include deceit, a remedy sounding in tort and requiring no privity.
In Hertsler v. Manshum (228 Mich. 416, 423) the court held: “ The implied warranty, so-called, reaching from the manufacturer of food stuffs to the ultimate purchaser for immediate consumption is in the nature of a representation that the highest degree of care has been exercised and a breach of such duty inflicting personal injury is a wrong in the nature of a tort ”.
Our Court of Appeals has recognized the hybrid character of the breach of warranty action, for it said, in Greco v. Kresge Co. (277 N. Y. 26, 34 [1938]): “ The duty rested on defendant (retail dealer) to see, at its peril, that the food was fit for human consumption and it is based on considerations of public health and public policy * * * the breach is a wrongful act, a default and, in its essential nature, a tort.”
And in Blessington v. McCrory Stores Corp. (305 N. Y. 140 [1953], supra), the court said (p. 147): “ While an action for breach of a statutorily implied warranty of fitness may involve, incidentally, some showing of negligence, the contract breached is not merely one to use due care, but is a separate (implied) contract of guaranty that the goods are fit for the purpose for which they are sold and bought ”.
In a breach of implied warranty action, the elements of a warranty by representation are present, and in a practical world there should be no magic in the esoterics of privity of contract. The principle imposing liability for damages sustained by this false representation is essentially a part of the doctrine of torts. (42 Harv. L. Rev. 415-417.)
*45 “ Privity doctrine unsatisfactory. The limitation of the right to recover for breach of an implied warranty, in the sale of food and drink for human consumption, to those in privity with the seller, is based more on technicality than on reason and overlooks the fundamental conception of liability under the early law [when food sold for human consumption occupied a preferred position over other goods, the dealer therein being made an absolute insurer of his product]. (See 23 Cal. L. Rev. (1935), 621; 9 N. Y. Univ. L. Rev. (1932), 366; 30 Ill. L. Rev. (1935), 398; and Vold, Sales, p. 476.) Such warranties had their inception in a desire to protect the health of the people. They emanated from the positive duty imposed upon dealers in food and drink by penal statutes, and came to be known as implied warranties merely from the civil liability of an insurer, for which such dealers were answerable in tort if they violated this duty.” (Melick, Sale of Food and Drink, p. 94.)
The breach of warranty of fitness stems from a representation generally implied in fact, rather than a promise. The breach, therefore, smacks more of deceit and tort than it does of contract, despite the fact that it developed after assumpsit was accepted as the appropriate form of action for all breaches of warranty. If so, the warranty of fitness may be characterized as a ‘‘ warranty of law”. (If the courts, through mistake or otherwise, generally consider the implied warranty as contractual rather than representational in character, it would be fatuous not to take into account the prevalence of that assumption. " Even so, it should not be forgotten that the implied warranty is in large part an invention of law, irrespective of what is actually promised or represented by implication in the particular case. The moral of this analysis is not so much that a court should feel obliged to consider the breach of an implied warranty of fitness or merchantability a tort as that it should not feel obliged by logic and history to consider it an unalloyed breach of contract, with the normal consequences and limitations of such an approach. Results the court may believe desirable can frequently be founded on the tort theory (whether breach of actual representation or duty raised by law) or on a tort-contract hybrid, 'and it such not be inhibited in reaching those results by false notions of legal history or by other inappropriate assumptions. (Dickerson, Products Liability and the Food Consumer, pp. 42-44.)
WHY THEN THE PRIVITY BARRIER IN WARRANTY ACTIONS?
‘ ‘ There seems after all to be little if any difference between a liability based upon an implied warranty and a positive duty *46 based upon public policy. Both operate irrespective of negligence, and the same facts will support either. Peculiar as it may seem, however, the courts require privity for recovery in cases resting on the theory of warranty but not in those resting on the theory of tort liability. This distinction is questionable ’ ’. (7 Calif. L. Bev. 360, 364.)
There is no earthly reason why the pernicious life of the privity requirement (Miller, N. Y State Bar Bull., Oct. 1952, p. 315) persists insofar as warranty actions are concerned when, as far back as 1916, it had been removed from the negligence action (MacPherson v. Buick Motor Co., 217 N. Y. 382) other than the statement in the Chysky (235 N. Y. 468, supra) and Gimenez (264 N. Y. 390, supra) cases that breach of warranty rests strictly upon contract and therefore privity in an essential.
The hybrid tort-contract warranty action arises simultaneously with the pure negligence action in products liability cases. Both the negligence and warranty actions are for personal injuries resulting from the breach or default in the performance of a duty or the failure to live up to an implied representation. The only distinction is that the negligence action requires proof of failure to use due care, whereas breach of warranty is liability (without negligence) for the fitness of the product.
The measure of damages in breach of warranty actions is exactly the same as in negligence. If the warranty action is construed strictly on contract (.so that privity is an essential), it is indeed strange that the measure of damages differs so vastly from that which is awarded in breach of contract actions. This differential should certainly trouble the purists for an explanation.
Furthermore, although negligence plays no part in a breach of warranty action, contributory negligence may be asserted as a defense to the breach of warranty action (Fredendall v. Abraham & Straus, 279 N. Y. 146; Coca-Cola Bottling Co. v. Barksdale, 17 Ala. App. 606; Kraft-Phenix Cheese Corp. v. Spelce, 195 Ark. 407; Great Atlantic & Pacific Tea Co. v. Eiseman, 259 Ky. 103; Kelley v. Daily Co., 56 Mont. 63; Rudolph v. Coca-Cola Bottling Co., 4 N. J. Mis. Rep. 318; De Groat v. Ward Baking Co., 102 N. J. L. 188; Coca Cola Bottling Works v. Kennedy, 13 Tenn. App. 199; Catalanello v. Cudahy Packing Co., 264 App. Div. 723; Kurth v. Krumme, 143 Ohio St. 638; Great Atlantic & Pacific Tea Co. v. Hughes, 131 Ohio St. 501, affg. 53 Ohio App. 255; Cordell v. Macon Coca-Cola Bottling Co., 56 Ga. App. 117; Ternay v. Ward Baking Co., 167 N. Y. S. 562).
And so a California court aptly remarked in Escola v. Coca Cola Bottling Co. of Fresno (24 Cal. 2d 453, 463): “ It is need *47 lessly circuitous to make negligence the basis of recovery and impose what is in reality liability without negligence. If public policy demands that a manufacturer of goods be responsible for their quality regardless of negligence there is no reason not to fix that responsibility openly.”
In Greenwood v. Thompson Co. (213 Ill. App. 371) an Illinois appellate court granted recovery in an action on the case brought by the administrator of a restaurant patron mortally injured by defective food served by the defendant. The court said (p. 374): “ "Where an action on the case is brought for breach of warranty, the gravamen of the action is not fraud and deceit but merely lies in the wrongful act of the defendant in making a false warranty”. Similar cases appear in several other States. (See Schuler v. Union News Co., 295 Mass. 350, 353; Burgess v. Sanitary Meat Market, 121 W. Va. 605, 611; Lovich v. Salvation Army, 81 Ohio App. 317.)
In Flessher v. Carstens Packing Co. (93 Wash. 48), the plaintiff sued a retailer in tort for negligence based on injuries caused by unfit beef purchased from the defendant. The Supreme Court of Washington held that despite his failure to show actual negligence the plaintiff was entitled to recover in tort for breach of implied warranty, the obligation being created by implication of law independent of the contract ” (p. 52). Liability was said to rest on “‘the demands of social justice ’ ” (p. 55). The court also said: ‘ ‘ Whether the action be called one on warranty or of negligence it comes to the same thing*. It sounds in tort” (p. 56).
It makes absolutely no sense whatsoever, therefore, to draw the fictional distinction of removing the privity barrier in the negligence action so that the nonpurchaser consumer may sue the manufacturer as well as the retailer for negligence, but not for breach of warranty, because of the erroneous assumption that the warranty action is based strictly on contract.
IS LEGISLATIVE ACTION NECESSARY?
Let us now turn to defendant’s contention that the warranty extends to the immediate buyer only and that in order for the infant to obtain the benefit of the warranty right, it is necessary to secure a statutory amendment to section 96 of the Personal Property Law.
The section provides that there is an implied warranty as to quality and fitness (subd. 1): ‘ ‘ Where the buyer, expressly or by implication, makes known to the seller the particular purpose for which the goods are required, and it appears that the buyer relies on the seller’s skill or judgment *48 (whether he be the grower or manufacturer or not), there is an implied warranty that the goods shall be reasonably fit for such purpose.”
There is absolutely no need for legislative change because it never could have been the intention of the Legislature to deprive an infant of the warranty right simply because the mother purchased the goods.
The words “ reasonably fit for such purpose ” mean that the goods are fit “ for the purpose for which they are sold and bought ” (Blessimgton v. McCrory Stores Corp., 305 N. Y. 140, 147, supra). And in Holt v. Mann (294 Mass. 21, 23), the court held that the ordinary purpose for which a housewife purchases foodstuffs is — for human consumption — “domestic meals” and household table use. ‘ A finding that the ham is required for the purpose of domestic meals, and that such purpose is impliedly made known to the dealer, is as easy as a finding that one who orders a meal in a restaurant intends to eat it ” (Smith v. Gerrish, 256 Mass. 183); “and a further finding in each instance that the intention of the buyer is made known to the seller” (Ward v. Great Atlantic d Pacific Tea Co., 231 Mass. 90; Rinaldi v. Mohican Co., 225 N. Y. 70).
Ordinary ‘ ‘ household table use ’ ’ and ‘ ‘ domestic meals ’ ’ contemplates consumption by the nonbuyer consumer, whether he be an infant, husband, or even a friend or relative who has been invited as a guest to partake of a meal.
The law looks for “ the natural and necessary result of the breach of warranty reasonably within the contemplation of the parties when the sale was made and warranty given.” (Greco v. Kresge Co., 277 N. Y. 26, 30, supra; Ryan v. Progressive Grocery Stores, 255 N. Y. 388, supra.) “ ‘We think that the mere purchase by a customer from a retail dealer in foods of an article ordinarily used for human consumption does by implication make known to the vendor the purpose for which the article is required. Such a transaction standing by itself permits no contrary inferences ’ ” (Greco v. Kresge Co., supra, p. 30). (Italics supplied.)
Because it is so plainly manifest and glaringly apparent, the court can very well take judicial cognizance of the following, in line with the rule of “ reasonable expectation and contemplation ’ ’:
(1) a child is not expected to buy its own food and be its own food supplier;
(2) when a housewife makes food purchases, it is expected that she is buying the food for household table consumption ;
*49 (3) household table use includes any person naturally expected to partake of the food;
(4) the food is expected to be just as wholesome and fit for human consumption for the nonpurchaser consumer (infant) as it should be for the housewife who purchased it.
In Blackstone v. Miller (188 U. S. 189, 206) Justice Holmes said: “ When logic and the policy of a State conflict with a fiction due to historical tradition, the fiction must give way.”
And in Allen v. Allen (246 N. Y. 571, 580), the court said that courts are now inclined ‘ ‘ to look at the substance of rights rather than blindly to adhere to fictions ’ ’.
The intention of the Legislature was discussed in the } thoroughly illuminating, educational and convincing decision by a California court (where their Civil Code, § 1735, subd. [1], is absolutely identical Avith our Personal Property Law, § 96, subd. 1]), in Klein v. Duchess Sandwich Co. (14 Cal. 2d 272 [1939]). The husband Aras the purchaser of the food eaten by the injured xvife. The privity question, a double-barreled one, Avas there presented for the first time, and handled most admirably. The first question raised was “ Has the non-buyer consumer the right to sue the retailer for breach of AA'arranty ? ” The second question Avas ' May the non-buyer consumer sue the manufacturer as Avell as the retailer for breach of warranty instead of negligence 1 ”
The defendant contended (as here) that the implied warranty created by the statute contemplates the existence of a warranty running only from an immediate seller to an immediate buyer, and that therefore the wife, who was not the purchaser, did not have privity of contract with the retailer; furthermore, that her husband, the purchaser, did not have privity of contract with the defendant manufacturer. Coincidentally, the court discussed the right of an infant to recover for warranty where the parent makes a food purchase and also elaborated upon the intention of the Legislature:
‘ In adopting the statute here concerned as a part of the Uniform Sales Act (California Civil Code, § 1735), it was the clear intent of the legislature that, AAdth respect to foodstuffs, the implied warranty provision therein contained should inure to the benefit of any ultimate purchaser or consumer of food; and that it was not intended that a strict ‘ privity of contract ’ would be essential for the bringing of an action by such ultimate consumer for an asserted breach of the implied warranty.
*50 ‘ ‘ Although authorities to the contrary on the conclusion herein reached have imposed a strict privity of contract on a purchaser or consumer of aesertedly unwholesome food as an essential requisite for the bringing of an action on the implied warranty theory, nevertheless, the rulings made in the authorities herein cited are based on sound principles — affording as they do an adequate- remedy for injuries which may result from the eating of unwholesome food by an ultimate consumer who, under modern economic conditions, almost of necessity, must purchase many items of food prepared in original packages by the manufacturer and intended for the consuming public, although marketed through an intermediate dealer. The second contention made by the respondent Dutchess Sandwich Company — that recovery was precluded by the plaintiff wife because she was not the ‘ buyer ’ within the meaning of the statute and that, consequently, there was no ‘ privity of contract between the ‘ seller ’ and the wife ■— in effect, has been answered by the ruling hereinbefore made. However, on analyzing the question — in the light of the construction placed upon the statute by the respondent sandwich company — it is evident that, should such contention be upheld, the result would be that should a father or a mother of an infant child purchase from a grocer a bottle of unwholesome milk, or other deleterious food, for consumption by the child and, ensuing from its consumption thereof, the child become ill — no damages therefor by reason of a breach of an implied warranty would be recoverable. It would seem improbable that, in adopting the act, the legislature ever intended or even contemplated that such a construction would or could be placed upon the language of the section referred to herein ” (p. 283). (Italics supplied.)
In Illinois, where the statute is exactly the same as in New York, the privity question was presented for the first time directly to a court of review in Welter v. Bowman Dairy Co. (318 Ill. App. 305 [1943]). The court held, in a 62-page opinion, that when the purchaser (father) bought the milk, the defendant knew that the milk would be consumed not only by the purchaser but also by his family. Therefore, ‘ ‘ the implied warranty that the milk was fit for human consumption extended to the plaintiff (infant), although she was not the purchaser ” (p. 322).
The defendant contended that the warranty extended only to the purchaser and not to the infant, and cited, as authorities, Chysky v. Drake Bros. Co. (235 N. Y. 468, supra); Bourcheix v. Willow Brook Dairy (268 N. Y. 1, supra); Colonna v. Rosedale Dairy Co. (166 Va. 314); Gearing v. Berkson (223 Mass. 257, supra); Schlosser v. Goldberg (123 N. J. L. 470). The court *51 supported plaintiff’s theory “that defendant’s implied warranty that the milk was fit for human consumption is available to [the infant], a member of the family of the purchaser, * * ° who might reasonably be expected to be one of the persons who would consume the milk ” (p. 312).
The result attained here has been achieved virtually all over the country by judicial construction and interpretation, rather than by legislative action, as exemplified by the decisions in California, Illinois and other States having exactly the same statute as New York.
cardozo’s legacy.
Judge Cardozo’s decision in Glanser v. Shepard (233 N. Y. 236 [1922]) stands as a living testament to the appropriateness and applicability of the third-party beneficiary rule in breach of warranty actions, particularly since public health is involved. It is absolute proof of the advisability of discarding the privity doctrine in the interest of justice as well as reason. Let us apply the decision to the facts in this case:

In Glanser

" The defendants held themselves out to the public as skilled and careful in their calling ” (p. 239).
“ They knew that the beans had been sold, and that on the faith of their certificate payment would be made ” (p. 239).
“ In such circumstances, assumption of the task of weighing was the assumption of a duty to weigh carefully for the benefit of all whose conduct was to be governed ” (p. 239).

In the case at bar

(The defendant held itself out to the public as one who sells food fit for human consumption.)
(They knew or are presumed to know that a housewife makes the usual household food purchases for the benefit of members of her family and not just for herself.)
(Duty to sell fit food.)
(For the benefit of all who partake of the purchased food.)
And now Judge Cardozo advances his reasoning for the extension of the third-party beneficiary rule, which is so ideally fitted to the sale of household food and drugs because of the “ duty imposed by law ’ ’ that the food purchased should be fit for human consumption by all who partake of it regardless of who pays for it:
*52 “ We do not need to state the duty in terms of contract or of privity. Growing out of a contract, it has none the less an origin not exclusively contractual. Given the contract and the relation, the duty is imposed by law * * * There is nothing new here in principle. If there is novelty, it is in the instance only. One who follows a common calling may come under a duty to another whom he serves, though a third party may give the order or make the payment ” (p. 239).
“ The line of separation between these diverse liabilities is difficult to draw. It does not lose for that reason its correspondence with realities. Life has relations not capable always of division into inflexible compartments. The molds expand and shrink. We state the defendants’ obligation, therefore, in terms, not of contract merely, but of duty. Other forms of statement are possible. They involve, at most, a change of emphasis. We may see here, if we please, a phase or an extension of the rule in Lawrence v. Fox (20 N. Y. 268) as amplified recently in Seaver v. Ransom (224 N. Y. 233). If we fix our gaze upon that aspect, we shall stress the element of contract, and treat the defendants’ promise as embracing the rendition of a service, which though, ordered and paid for by one, was either wholly or in part for the benefit of another ” (p. 241). (Italics supplied.)
It is significant to note that he actually overcomes the privity problem by using the “ duty imposed by law” as a means of adopting the third-party beneficiary rule so that the defendant’s promise to do something “ though paid for by one ”, extends to ‘ the benefit of another. ’ ’ There is no valid reason why the principle expounded here is not suitable and adaptable to breach of warranty cases.
FURTHER FORTIFICATION FOR THE THIRD-PARTY BENEFICIARY RULE.
Adoption of the third-party beneficiary rule has been frequently urged or its application favorably commented on especially in transactions made for the benefit of members of the family. (See 33 Colum. L. Rev. 868; 1 Law & Contemporary Problems, p. 1; 4 Fordham L. Rev. 295; 42 Harv. L. Rev 414; 30 111. L. Rev. 398; 5 Iowa L. Bull. 86; 29 Mich. L. Rev. 906; 9 IN'. Y. U. L. Rev. 366; 4 St. John’s L. Rev. 80; 9 St. John’s L. Rev. 216; 27 Yale L. J. 1068; 23 Calif. L. Rev. 621; Void on Sales, p. 476.)
The third-party beneficiary rule was applied in Ward Baking Co. v. Trizzino (27 Ohio App. 475, 482) where the court held that “ this contract between the groceryman and the Ward *53 Baking Company to all intents and purposes was a contract entered into for the benefit of a third party, to wit, the ultimate consumer.” (Italics supplied.) In Davis v Van Camp Packing Co. (189 Iowa 775, 800) and Anderson v. Tyler (223 Iowa 1033, 1036) the court held that “ the implied warranty that such products are fit for use, run with the sale, and to the public, for the benefit of the consumer, rather than to the wholesaler or retailer, and that the question of privity of contract in sales is not controlling ”. (Italics supplied.) To like effect see Klein v. Duchess Sandwich Co. (14 Cal. 2d 272, supra); Curtiss Candy Co. v. Johnson (163 Miss. 426); Nock v. Coca Cola Bottling Works of Pittsburgh (102 Pa. Superior Ct: 515); Meshbesher v. Channellene Oil & Mfg. Co. (107 Minn. 104); Challis v. Hartloff (136 Kan. 823); Tomlinson v. Armour & Co. (75 N. J. L. 748); Salmon v. Libby, McNeill & Libby (219 Ill. 421); Haley v. Swift & Co. (152 Wis. 570); Biedenharn Candy Co. v. Moore (184 Miss. 721); Decker & Sons v. Capps (144 S. W. 2d 404 [Tex.]); Patargias v. Coca-Cola Bottling Co. of Chicago (332 Ill. App. 117); Watson v. Augusta Brewing Co. (124 Ga. 121).
In Ketterer v Armour & Co. (200 F. 322, 323) adopted "in Davis v. Van Camp Packing Co. (189 Iowa 775, supra) and Klein v. Duchess Sandwich Co. (14 Cal. 2d 292, supra) the court said:
“ The remedies of injured consumers [of unwholesome food] ought not to be made to depend upon the intricacies of the law of sales. The obligation of the manufacturer [to such consumer] should not be based alone upon privity of contract.” (Italics supplied.)
“ Although the cases differ in their reasoning, all agree that there is a liability in such cases (sale of foodstuffs) irrespective of any privity of contract in the sense of immediate contract between the parties * * * a manufacturer of food products under modern conditions impliedly warrants his goods when dispensed in original packages, and that such warranty is available to all who may be damaged by reason of their use in the legitimate channels of trade.” (Italics supplied.) (Mazetti v. Armour & Co., 75 Wash. 622, 625-626, 630.)
The third-party beneficiary doctrine was approved in the Klein v. Duchess Sandwich Co. (14 Cal. 2d 272, supra) case, citing Dryden v. Continental Baking Co. (11 Cal. 2d 33) where the husband bought the bread, the court saying (p. 284): “In answer to the contention of the. defendant baking company that no recovery should have been allowed on the implied warranty theory because there was lack of privity of contract, the court observed that, ‘ assuming that privity is an essential element of such an action, it might well be urged that the wife * * * *54 was a third party beneficiary of the contract!” (Italics supplied.)
The Klein case continues (p. 284): “ The warranty as to the fitness of foodstuffs intended for human consumption was not intended to be solely for the benefit of the immediate buyer ’, but was intended to be for the benefit of the ultimate consumer, — the existence of privity of contract not being essential in an action brought by such consumer on the warranty theory. To allow a recovery by such third person, who may have consumed unwholesome food purchased by another, would not impose a greater burden on the manufacturer or on the immediate seller of the food than would be thus imposed if the original purchaser had been injured by reason of the consumption thereof — since the warranty extended to every consumer is that the food is fit for the purpose for which it was intended, namely, for human consumption.” (Italics supplied.)
The biggest roadblock to the actual use in New York of the third-party beneficiary rule (by its name) in breach of warranty cases, has been due to the claim that the Gimenez case (264 N. Y. 390 [1934], supra) is authority for the proposition that the third-party beneficiary doctrine is not applicable in breach of warranty cases. And so the courts have continually refused to employ the rule as a means of circumventing the strict privity doctrine of the Chysky case (235 N. Y. 468 [1923], supra) because the court said (Gimenez v. Great Atlantic & Pacific Tea Co., supra, p. 395): “ the courts have never gone so far as to recognize warranties for the benefit of third persons.”
True the court made this statement. But, immediately preceding the above sentence, we do find the following: “We do not overlook the fact that a sort of third party beneficiary rule might be invoked to give the husband a cause of action in contract. The answer to that contention is that1
In face of the admission that the third-party beneficiary rule may be applicable, should the answer given continue to act as the authority to deter and hamstring the courts from adopting the rule in the appropriate case 1
In sustaining the defense argument that “ when the wife is the purchaser, the warranty right vests in her; and not in the husband, and therefore, the husband has no cause of action for breach of warranty,” the court said (p. 393): “In Gearing v. Berkson [223 Mass 257], the court said that the cause of action for breach of warranty rests on contractual relations and hence there is no warranty except to the person to whom the sale is made. The same rule is laid down in this court in Chysky v. Brake Bros. Co. (235 N. Y. 468), which held in substance tha *55 t to sustain a finding that there was a breach of warranty, express or implied, there must have been evidence of contract between the parties, for without a contract there would be no warranty ’ ’ ’.
Por a dynamic critical answer to the Gearing (223 Mass. 257, supra), Gimenez (264 N. Y. 390, supra) and Chysky (235 N. Y. 468, supra) cases, see article (NACCA L. J. Vol. 21) by Prof. Thomas F. Lambert, Jr. (who succeeded Dean Boscoe Pound of Harvard, as editor-in-chief of the NACCA L. J.) (pp. 420^421): But stubborn insistence on the arbitrary privity rule may lead to grotesquely indefensible results, as where the butcher shop which sells impure pork chops is held to warrant them to the husband who buys them, but not to the wife, child, relative, or social guest who consumes them. This shuddering result occurred in Gearing v. Berkson, 223 Mass. 257, 111 N. E. 785 (1916) (which forms the basis for the GhysTty and Gimenes decisions). It is a melancholy state of affairs to witness courts more preoccupied with privity than consumer protection.”
Prof. Lambert suggests that logically the courts might usefully invoke the Blessington case (305 N. Y. 140, supra) as a basis for recognizing an implied warranty running to a third-party beneficiary, and continues (p. 421): A court’s capacity to do justice in the field of products liability can be withered by an overzealous attachment to the archaic privity rule * * a court nominally committed to the talismanic privity rule can judiciously avoid its blighting effects and, by admirable resourcefulness, invoke the implied warranty mechanism (so that the warranty right is extended to the third party beneficiary) * * *. gee also 20 NACCA Law Journal 291-302; 17 id. 375-376; 16 id. 352-356.” The responsibility to keep the law straight is a high one. It should not be reduced to the mean task of keeping it straight and narrow.’ Traynor, gome Open Questions on the Work of State Appellate Courts,’ 24 IT. Chi. L. Bev. 211,219 (1957).”
melick’s confession.
It might not be amiss to point out that Harry Melick, the attorney who successfully presented the defense arguments to the Court of Appeals in behalf of A. & P. in the Gimenez case (264 N. Y. 390, supra), must have had mental reservations. Or perhaps, in convincing the court, he most likely unconvinced himself. At any rate, he undoubtedly must have regretted his contribution to the enfeeblement of consumer protection, for he made amends for his ‘ misdeeds ’ by spending two years of research, immediately following the decision, in order to write *56 Ms excellent book entitled “ The Sale of Food and Drink ”, published in 1936. His pungent and decisive attack upon the privity “ bugaboo ” clearly evinces a change of heart:
“ The Court of Appeals [in the Gimenez case, 264 N. Y. 390, supra], while claiming not to be unmindful that a sort of third party beneficiary rule might be invoked in cases for breach of an implied warranty, refuses to adopt such a rule, on the ground that the courts have never gone so far as to recognize warranties for the benefit of third persons ’ ” (p. 150).
“ Application of the third party beneficiary doctrine to the purchase of food by the wife or husband is appropriate and should not be denied, for not only are the contracts of purchase entered into for the benefit of the wife and members of the family (these constituting the second group of cases referred to by Pound, J., in Seaver v. Ransom, supra) but the fact that the purchase is made for family use is, from the nature of the transaction, within the contemplation of both buyer and seller ” (pp. 152-153).
‘ In view of this fact [that the husband is liable for necessaries purchased by the wife for her benefit or for the benefit of their children] it would seem more logical to apply the doctrine of beneficiary contracts when food and table necessaries are purchased from a retailer by a wife or other member of the household for family use. Such application would avoid a seeming inconsistency on the part of the court as to the wife’s agency and prevent failure of recovery on the part of a child on an implied warranty in those cases where food is bought by its mother and the child is injured through impurities therein, as is now the situation in New York ” (p. 100).
“ If [the third party beneficiary rule] were generally applied to food and drink bought from a retailer for use of the family, no longer would the courts be confronted with the necessity of determining whether the wife in purchasing was acting as agent of the husband or whether the husband in buying did so in his own behalf or for the benefit of others. Neither would the courts be called upon to deny to the wife the benefit of such warranty when the purchase is made by the husband (Haas v. Grand Ave. Baking Co. Inc., 93 N. Y. L. J. 1054 [Feb. 28,1935]) where the court held (‘ there was an implied warranty to the purchaser [the husband] * * * This warranty however, under the ruling in that case [of Gimenez v. Great A. & P. Tea Co., 264 N. Y. 390] does not extend to the plaintiff [wife] for lack of contractual relationship ’), or to deny it to the husband when the purchase is made by the wife, (the Gimenez case, 264 N. Y. 390, supra), or to deny it to the minor child who has been *57 injured, simply because the purchase was made by his mother without evidence of her agency, as is now the situation in New York. (Redmond v. Borden Farm Products Co., 245 N. Y. 512; Smith v. Hanson, 228 A. D. 634; Block v. Empire State Doughnut Corp., 233 A. D. 774) ” (pp. 158-159).
“ The result has been in such cases for the New York courts to disregard most obvious facts, for experience has shown that it is generally customary for such purchases to be made either by the mother as manager of the household, in the exercise of her natural and moral duty, or by the husband as head of the family, in fulfillment of the duties and obligations imposed upon him by law ” (p. 159).
“ ‘ The life of the law has not been logic; it has been experience ’ (Holmes, The Common Law, p. 1). It was experience culminating in public policy that caused the adoption in the early days in England of that broad general principle which established a rule of conduct by ordaining that none sell unwholesome food and drink ” (pp. 159-160).
“ This principle should be accepted without qualification, for it conforms to social needs just as much now as it did in the early days in England. If it be said that the rule of stare decisis is a bar, let that rule be considered in the light of stare principiis, (see Prof. Williston, Change in the Law, 69 U. S. L. Rev. [May 1935], 236-42 [quoting Ch. J. Cabdozo, who said in his report] (N. Y. State Bar Assn., 1932, p. 294): ‘ I have little doubt that with the mounting years and the ever mounting mass of precedents there will be need to modify the doctrine [stare decisis] by bringing it into harmony with a sounder conception of the meaning of all knowledge) ’ ” (p. 160).
‘ For the benefit to the public in the future is of more importance than blind adherence to bad decisions of the past. Public policy requires that the wife be allowed to perform her duties and attend to the affairs of her household without prejudice, for the whole purpose of married life and the obligations that go with it are defeated if the wife is under any restraint in the purchase of food and similar domestic necessaries, or is without recourse or in a different legal position from her husband if injured through unwholesome food, simply because her husband and not she has been the purchaser ” (p. 160).
‘ ‘ If the situation be thus looked at from a contractual aspect and the manufacturer’s promise treated as embracing the fitness of his product for human consumption, which though ordered and paid for by one person was wholly or in part for the benefit of another, the point is reached for invoking the third party beneficiary rule. Although in each instance the *58 identity of the person to whom these representations are made is not ascertainable at the time of sale by the manufacturer to the retailer, nevertheless he and those for whose benefit he is acting are clearly designated as the ones for whom the article is intended. Their rights come into being as soon as the article is lawfully obtained ” (p. 155).
‘ ‘ The situation is somewhat analogous to that where a manufacturer of automobiles makes a contract with an insurance company to insure its cars, the contract to be effective when the cars are sold to purchasers by retail dealers. For at the time the contract is made such retail purchasers are unknown and have no insurable interest, but their identities are disclosed and their interest comes into being when they purchase ears-(Palmetto Ins. Co. v. Beha, (1926) 13 F. (2d) 500, 510.) Aside from this it seems’ to be the rule in some states, at least in New York, that it is not essential that the donee beneficiary he identified when the obligation is made. (McClare v. Mass. Bonding & Ins. Co., (1935) 266 N. Y. 371, 379-80; American Law Institute’s Restatement of the Law of Contracts, Sec. 139) ” (pp. 155-156).
“ The way is open for the courts to disregard the unsatisfactory and seemingly insurmountable privity doctrine and to hold the manufacturer of food or drink, put on the market for sale in sealed containers, liable to an injured consumer for breach of an implied warranty of quality should the product prove unfit for the purpose sold. This may be accomplished by following the Illinois court (Greenwood v. Thompson Co., [39.19] 213 Ill. App. 371), and considering the warranty in its tort aspect or by applying the third party beneficiary rule as was done in Ohio (Ward Baking Co. v. Trizzino, [1928] 27 Ohio App. 475), and considering the warranty in a contractual sense. Either way accords with reason and is a consummation devoutly to he wish’d ’ since privity narrows the protection afforded, for it shuts off the injured consumer should he not be the actual purchaser, and shears of its vitality the absolute duty and insurer’s liability with which dealers in food and drink were charged at common law ” (pp. 95-96).
THE PUBLIC POLICY FACTOR.
The assault upon the citadel of privity now continues with renewed effort because its foundations are weak. The fortress built around the privity structure is weakened because the beams rest on technicality only. Reason outranks technicality, particularly where the rights of human beings are concerned and where public policy and the demands of social justice require it.
*59 The rule limiting the right to recover for breach of an implied warranty in the sale of foodstuffs to those in privity with the seller, being obviously technical, and shown to be historically unsound, has created dissatisfaction in the legal profession with the result, that it has been repeatedly criticised. (See 7 Calif. L. Rev. 360 [1919]; 23 Calif. L. Rev. 621 [1935]; 33 Col. L. Rev. 868 [1933]; 1 Law &. Contemporary Problems, p. 1 [1933]; 4 Fordham L. Rev. 295 [1935]; 34 Harv. L. Rev. 762 [1921]; 42 Harv. L. Rev. 414 [1929]; 30 111. L. Rev. 398 [1935] ; 5 Iowa L. Bull. 86 [1919]; 29 Mich. L. Rev. 906 [1931]; 9 N. Y.' IT. L. Rev. 366 [1932]; 4 St. John’s L. Rev. 80 [1929]; 9 St. John’s L. Rev. 216 [1935]; 27 Yale L. J. 1068 [1918]; 29 Yale L. J. 782 [1920]; Void on Sales, p. 476.)
Great dissatisfaction with the strict privity doctrine has been frequently expressed by modern legal educators and writers. They view the problem as essentially an enterprise liability, and that the ultimate consumer in food cases should not only have the right, of suing the retailer for breach of warranty but should also ha ve that right against the manufacturer as the guarantor of the fitness and wholesomeness of it§ product when it is used for the purpose and in the manner intended. In no other way, they argue, can a fair and reasonable measure of seem i'™ be obtained for the public at large. Courts throughout the la.td have endeavored to extend the buyer’s protection under classic warranty law to the nonbuyer consumer by either abandoning o; liberally construing the privity requirement, some being on “ public policy ”, some on “ breach of duty ”, others on “ social justice ”, and still others on the third-party beneficiary rule. Again, it is the food cases with their constant stress upon the promotion of public health which have led the way. (Melick, The Sale of Food and Drink; Perkins, Unwholesome Food as a Source of Liability, 5 Iowa L. Bull. 86; Jeanblanc, Manufacturers Liability to Persons Other Than Their Immediate Vendees, 24 Va. L. Rev. 134; Llewellyn, Warranty of Quality and Society, 36 Col. L. Rev. 699; James, Products Liability, 34 Texas L. Rev. 192; 4 Iowa L. Bull. 606; 19 N. C. L. Rev. 551; 3 Syracuse L. Rev. 106; 43 Calif. L. Rev. 614; Dickerson, Products Liability and the Food Consumer, p. 65; 42 Harv. L. Rev. 414; 46 Harv. L. Rev.; 52 Harv. L. Rev. 328; 23 Calif. L. Rev. 621; Eisenbeiss v. Payne, 42 Ariz. 262; Davis v. Van Camp Packing Co., 189 Iowa 775, supra; Parks v. Yost Pie Co., 93 Kan. 334; Challis v. Hartloff, 136 Kan. 823, supra; Hertzler v. Manshum, 228 Mich. 416, supra; Bark v. Dixson, 115 Minn. 172; Coca-Cola Bottling Works v. Lyons, 145 Miss. 876; Curtiss Candy Co. v. Johnson, 163 Miss. 426, supra; Jackson Coca Cola *60 Bottling Co. v. Chapman, 106 Miss. 864; Rainwater v. Hattiesburg Coca-Cola Bottling Co., 131 Miss. 315; Ward v. Morehead City Sea Food Co., 171 N. C. 33; Ward Baking Co. v. Trizzino, 27 Ohio App. 475, supra; Nock v. Coca Cola Bottling Works of Pittsburgh, 102 Pa. Superior Ct. 515, supra; Boyd v. Coca Cola Bottling Works, 132 Tenn. 23; Mazetti v. Armour & Co., 75 Wash. 622, supra.)
In Davis v. Van Camp Packing Co. (189 Iowa 775, 800-801, supra) the court stressed ‘ ‘ the sacredness of human life ’ ’ and treated the warranty as a representation imposed by law for the benefit of the public: “ We make a distinction between food products which are canned, bottled, or wrapped in such a way that the contents and the condition thereof may not be known to the purchaser until opened for use by the consumer, and products which are not so put up, and the condition of which is observable * * * We are of opinion that the duty of a manufacturer to see to it that food products put out by him are wholesome, and the implied warranty that such products are fit for use, run with the sale, and to the public, for the benefit of the consumer, rather than to the wholesaler or retailer, and that the question of privity of contract in sales is not controlling, and does not apply in such a case * * * Or it may be treated as a representation or a warranty that, because of the sacredness of human life, food products so put out are wholesome. In either event, a failure in this respect is a breach of duty and a breach of warranty, and a plaintiff suing may rely on either or both ”. (Italics supplied.)
The learned opinion by Chief Justice Alexander in Decker & Sons v. Capps (139 Tex. 609 [1942]), reveals the adoption of a broad public policy viewpoint. The court not only discarded ‘ privity ’ ’, but ‘ ‘ negligence ’ ’ as well. It evolved the term ‘ ‘ warranty of purity ’ ’. A consumer, who purchased contaminated food from a retailer, was permitted to recover in breach of warranty against the manufacturer. The court held there is a so-called implied “ warranty of purity ” (p. 612) which is imposed by operation of law as a matter of ‘ ‘ public policy ’ ’ of protecting human health and life. The court said there is no merit in denying relief to a consumer against a manufacturer on the ground of lack of direct contractual relation because public policy in the sale of food intended for human consumption demands it. Cases in many States are cited showing that
" There is a growing tendency, however, to discard the requirement of privity and to hold the manufacturer liable directly to the ultimate consumer ” (p. 617).
*61 In Curtiss Candy Co. v. Johnson (163 Miss. 426, supra) the court held that the liability was not in tort for negligence but was for breach of implied warranty by the manufacturer in favor of the consumer, and that when an article of food is sealed and placed on the market for human consumption if is “ as though the consumer had bought directly from the manufacturer ” (p. 434).
In an action for breach of warranty, an exception is made in the case of medicine and foodstuffs, and the manufacturer is held to warrant to the ultimate consumer that the article is fit for human consumption (Rachlin v. Libby-Owens-Ford Glass Co., 96 F. 2d 597, 600).
In Hertzler v. Manshum (228 Mich. 416, 422-423, supra) the court said: “ The ultimate contemplated destination of wheat flour is human consumption. The manufacturer knows this and owes a duty to the ultimate consumer of his product to guard against poison therein, and when he markets it he impliedly warrants if free from poison and the purchaser thereof, for consumption, has a right to and must, of necessity, rely upon such implied warranty, and such duty, represented as performed and relied upon as having been performed, bring the maker and consumer of such food product into privity, and for an injury arising out of a breach of such duty, impliedly warranted as performed, the sufferer may reach the one in fact inflicting the injury. The implied warranty, so-called, reaching from the manufacturer of food stuffs to the ultimate purchaser for immediate consumption is in the nature of a representation ”.
Some cases have imposed the absolute liability of a warrantor on a manufacturer in favor of the ultimate purchaser, where food has been sold to a subpurchaser (Dothan Chero-Cola Bottling Co. v. Weeks, 16 Ala. App. 639; Davis v. Van Camp Packing Co., 189 Iowa 775, supra; Parks v. Yost Pie Co., 93 Kan. 334, supra; Ward v. Morehead City Seafood Co., 171 N. C. 33, supra; Catani v. Swift & Co., 251 Pa. 52; Flessher v. Carstens Packing Co., 93 Wash. 48, supra).
The Illinois and Iowa courts approved the statement of the Supreme Court of Tennessee in Boyd v. Cola Cola Bottling Works (132 Tenn. 23, 30, supra) that “ Upon whatever ground the liability of such a manufacturer to the ultimate consumer is placed, the result is eminently satisfactory, conducive to public welfare, and one which we approve.”
In Graham v. Bottenfield’s, Inc. (176 Kan. 68 [1954]), privity was removed as a factor in the sale of a hair preparation, on the ground that public policy is the basic foundation for the imposition of liability in such a case as well as in food cases, *62 citing Lukens v. Freiund (27 Kan. 664); Nichols v. Nold (174 Kan. 613); Swengel v. F. & E. Wholesale Grocery Co. (147 Kan. 555).
For other cases employing the public policy factor to discard privity, see Blanton v. Cudahy Packing Co. (154 Fla. 872); Madouros v. Kansas City Coca Cola Bottling Co. (230 Mo. App. 275); McNicholas v. Continental Baking Co. (112 S. W. 2d 849 [Mo]); Helms v. General Baking Co. (164 S. W. 2d 150 [Mo.]); Coca Cola Bottling Co. v. Enas (164 S. W. 2d 855 [Tex.]); Williams v. Campbell Soup Co. (80 F. Supp. 865); Rainwater v. Hattiesburg Coca-Cola Bottling Co. (131 Miss. 315, supra); Griffin v. Asbury (196 Okla. 484); Nelson v. West Coast Dairy Co. (5 Wn. [2d] 284); Baum v. Murray (23 Wn. [2d] 890); Bahlman v. Hudson Motor Car Co. (290 Mich. 683); Baxter v. Ford Motor Co. (179 Wash. 123).
Public policy and the sacredness of human life demand that the warranty right of the ultimate consumer be extended against the manufacturer, particularly in the case of sealed food and drug products. The requirements of privity are satisfied by today’s commercial advertising, printed labels and merchandising methods wherein the dealer, in acting’ as the distributor of the manufacturer’s product for the purpose of resale to the public, may be rightly considered under the circumstances to be the manufacturer’s agent for the purpose of warranting the fitness and wholesomeness of the product. The manufacturer’s goal, in marketing a product, is the ultimate consumer. From the very moment the manufacturer puts the product on the market, he makes a tacit representation through his distributors aimed squarely at “Joe Doakes ”, the man on the street, that the product is fit and wholesome. Therewith is privity supplied. The warranty and representation is not made only to the dealer and does not stop there. The contract between the manufacturer and the dealer that the food be fit for human consumption is made for the benefit of a third party — not only the purchaser but the ultimate consumer. It continues from the time of marketing until the process of reaching the ultimate consumer through merchandising channels is attained, the retailer merely acting as a conduit.
CONCLUSION.
To deprive the infants of the right to recover on the ground that they were not the “ buyers ” because they did not pay for the food or furnish their mother with the money to make the purchase, or that the mother did not specifically disclose to the retailer that she was making the food purchase for the use or *63 benefit of her children, could not have been the intention of the Legislature, and would be a narrow and cryptic interpretation of section 96 of the Personal Property Law. It would be opposed to common sense, antagonistic to basic legal concepts and deliberately ignoring universally-recognized facts of every day existence and common practice. Aside from the historical misconception and the misconstruction of the tort-contract hybrid, as well as the “public policy” factor and legislative intent, recovery here is nevertheless justified on the household agency theory and, even more so, on the third-party beneficiary principle. The retailer knows that the housewife is not just buying the food for herself but for household consumption. The infants come within the purpose for which the food was sold and are the naturally intended and reasonably contemplated consumers.
We must correct errors in the law and we must make those recognized and accepted changes with the times which are substantiated by reason and experience. Reason outranks technicality. Public welfare and human rights are far more important than a tenacious adherence to unsound decisions of the past, especially when outmoded or where reasons for their existence are nonexistent today. Faced with a general principle or rule, ‘ ‘ An exception to a rule will be declared by courts when the case is not an isolated instance, but general in its character and the existing rule does not square with justice.” (Mazetti v. Armour (& Co., 75 Wash. 622, 629, supra.) (Italics supplied.)
In Boyce v. Greeley Square Hotel Co. (228 N. Y. 106, 110) (Judge Cardozo sitting), the court held that where frequently a given state of facts will sustain recovery on more than one theory, if the court be satisfied from the evidence that the plaintiff be entitled to recover “ It is not necessary to determine with exact discrimination and accuracy whether the right of action in the case at bar is based upon a violation of a contract between the parties created through implication of the law or upon the infraction of an obligation or duty imposed by the law upon the defendant.”
The privity “bugaboo”, historically unsound, should be permanently discarded. Based on technicality and contrary to reason it will otherwise continue to serve as a substitute for and an escape from manufacturer’s products liability insurance, by furnishing immunity from liability (43 Calif. L. Rev. 614, 629; 3 Syracuse L. Rev. 259, 263; 19 N. C. L. Rev. 551, 565; Dickerson, Products Liability and the Food Consumer, pp. 65-68; 2 Yand. L. Rev. 675).
*64 As Chief Judge Cardozo said (address at annual dinner of New York State Bar Assn., Jan. 22, 1932, Report N. Y. State B'ar Assn., 1932, p. 290): Certainly the historie masters of the law have been the boldest in the pursuit of principles, though this is not to say that they have not also been bold in rejecting what had proved itself to be outworn or untenable.”
Whether the 1923 Chysky case (235 N. Y. 468, supra) is ready to join the ghosts of Drobner v. Peters (232 N. Y. 220; see Woods v. Lancet, 303 N. Y. 349) and Schloendorff v. Society of New York Hosp. (211 N. Y. 125; see Berg v. New York Soc. for Relief of Ruptured & Crippled, 1 N Y 2d 499; Becker v. City of New York, 2 N Y 2d 226) is for the ultimate disposition by the Court of Appeals. And it remains to be seen whether Dean Prosser’s 1955 suggestion (9 Ark. L. Rev. 81, 88) comes true: What we seem to be moving toward in the aftermath of the MacPherson case (MacPherson v. Buick Motor Co., 217 N. Y. 382, supra) is that aA%y person who makes a contract with anybody may be liable for injuries to person or property resulting from defective performance ”. (Italics supplied.)
" Precedents drawn from the days of travel by stage coach do not fit the conditions of travel to-day ” said Judge Cardozo in MacPherson v. Buick Motor Co. (217 N. Y. 382, 391, supra). (See, also, the reference to stare decisis ” in Judge Cardozo’s address to the N. Y. State Bar Assn., Jan. 22, 1932 Report, N. Y. State Bar Assn., 1932, pp. 290, 294.) To quote Justice Holmes, It is revolting to have no better reason for a rule of law than so it was laid down in the time of Henry IV. It is still more revolting if the grounds upon which it was laid down have vanished long since, and the rule simply persists from blind imitation of the past.” (The Path of the Law, 10 Harv. L. Rev. 457, 469.)
The sagacious words of Judge Desmoud, speaking for the Court of Appeals in Woods v. Lancet (303 N. Y. 349, 354-355, supra) are strikingly appropriate: Our court said, long ago, that it had not only the right, but the duty to re-examine a question where justice demands it (citing cases) * * * it is the duty of the court to bring the law into accordance with present day standards of wisdom and justice rather than with some outworn and antiquated rule of the past ’. * * * We act in the finest common-law tradition when we adapt and alter decisional law to produce common-sense justice.”
The question is shall we enshrine the privity mis-concept ” and erect a tablet of justice in its honor, or shall we put it to rest in its permanent resting place — never to be resurrected? To deny recovery here to the infants because the mother was the purchaser — the infants did not pay for the food — would be a gross miscarriage of justice. The archaic notion that privity is *65 an essential to recovery in a breach of warranty action is cardinal error. It requires the acceptance of the artificial and the shutting of our eyes to the realities of life. The motions to dismiss the infants’ warranty actions as a matter of law are therefore denied.
Factually, the issue here was whether foreign deleterious substance was present in the jar of jam when it was opened and whether the three plaintiffs were injured thereby. Although the stipulation conceded the presence of “ foreign substance ”, the defendant disputed the substance was “ worms ”. Whether they were live or dead does not matter if they caused harm. The breach of warranty is established if it. is proven that the worms were inside the jar when it was purchased. The court finds that the plaintiffs have sustained the burden of proof by a fair preponderance of the credible evidence and adjudges that each of the three plaintiffs are entitled to" judgment in the sum of $500 against the defendant.