CURTISS CANDY CO. v. JOHNSON.

(Division A.  May 16, 1932.  Suggestion of Error overruled June 13, 1932.)

[141 So. 762.  No. 30016.]

Henry Mounger, of Columbia, and **I. N. Walker** and **S. B. Krohn,** both of Chicago, Ill., for appellant.

Irwin N. Walker and Henry Mounger, for appellant.

Currie & Currie, of Hattiesburg, and Hall & Hall, of Columbia, for appellee.

**McGowen, J.**, delivered the opinion of the court.

On issue joined between W. I. Johnson, appellee, and the Curtiss Candy Company, appellant, on a declaration alleging a breach of implied warranty, the appellee recovered a judgment against the appellant for three thousand dollars; and an appeal is prosecuted here.

The material facts are that the appellee, Johnson, purchased from W. B. Thomas, a retail dealer, a piece of bar candy labeled "Baby Ruth Candy, The Curtiss Candy Company." The candy was purchased in Marion

county, at a filling station operated by Thomas, who also sold candy and other merchandise. The candy was taken from a large pasteboard box on shelf where he kept it. Immediately after having bought it, the appellee removed the wrapper from the candy and began eating it, and soon after taking two or three bites of the candy he complained to Thomas and others that there was glass in it, and spit out some of the candy in which were found small particles of glass. The evidence undisputably shows that the bar of candy was sealed, and until the appellee had broken the chocolate covering on the exterior of the bar it was an intact, unbroken, original package which was sealed in the paper wrapper covering it. Shortly after eating the candy, appellee complained of pain in his stomach, and members of his family induced him to go to see a physician, Dr. Bethea, to prescribe for him, who, in addition to giving him some medicine, prescribed that potatoes and bananas be eaten also. He suffered considerable pain that night, and on the day following there passed from him quantities of blood and some glass. A day or two later he again visited Dr. Bethea, and complained that some glass had not passed through his system, whereupon the doctor examined him and removed from his body several pieces of glass, which the doctor said were impossible for the appellee to have imbedded in his body. The appellee carried the remainder of the candy to the physician, who melted it and took therefrom bits of glass, which were offered in evidence. Appellee claims that since eating the candy containing the glass he has continuously suffered from pain in his stomach, and now has what is denominated gastritis; that he has thereby been unable to perform the duties of his vocation, and has been from time to time under the treatment of a physician up to the date of the trial of the case. There is no evidence in the record tracing the bar of candy from Thomas, the retailer, to the manufacturer. The appellee relied upon the facts detailed above as evi-

dence that Curtiss Candy Company manufactured the bar of candy with bits of glass therein.

The officers of the appellant candy company, in great detail, explained the scrupulous care exercised by it and its employees in the manufacture of its candy sold under the trade name of "Baby Ruth," showing that the company had gone to much expense in the installation and operation of improved machinery and methods in preparing the candy bars for the trade for human consumption as a food. Peanuts, opera cream, and caramel, combined together, constitute the center of the bar, which is coated with chocolate, making a solid bar in an unbroken shape. No articles of glass are permitted in the factory. The employees, consisting of two thousand five hundred or three thousand people, are not allowed to have any kind of metal about them save the key to their lockers, and close inspection is made both of the operators and the different ingredients of the candy. The output of the candy plant is from a million to a million and three-quarter bars a day. The president denominates it as a product of national reputation. According to the testimony of all the officers introduced in this case, the Curtiss Candy Company is the sole manufacturer of "Baby Ruth" candy. It was stated by the president of the company that other manufacturers of candy had imitated their candy bar in the appearance of the wrapper and general makeup of the bar, and that they had used names similar to "Baby Ruth" to mislead the public, but, when it was learned of the unfair competition, every effort was used to protect the good name and good will of the "Baby Ruth" bar. However, it is not stated within the knowledge of the company that any other manufacturer had undertaken to use the trade-name "Baby Ruth" or put out a bar of candy as being manufactured by the Curtiss Candy Company.

It is assigned as error that the court below refused a peremptory instruction to the appellant. The contention

is urged that there is a complete absence of proof that the candy alleged to have caused the injury was manufactured by the Curtiss Candy Company, or sold by it, or that the glass was in the candy at the time it was alleged to have been sold by the candy company. Of course, it would be impossible for the agents and employees of the company to give any testimony as to the particular bar which is alleged to have caused the injury; for, in this case, when a million and three-quarter bars a day are manufactured, it would not be humanly possible to identify one bar from thousands of others manufactured on the same day, and certainly not from the immense quantity manufactured within a week or a month; and none of the officers of the company had any knowledge whatever of the particular bar of candy here in controversy.

Counsel for the appellant also urge that the degree of care shown by the officers of the company in the manufacture of this product precludes the idea that there could have been glass in such quantities in the bar of candy when it left the factory; and in the transfer of the candy bars from the manufacturer to the consumer some other party in handling the bar might have allowed the glass to get therein. Appellant relies upon two cases only cited to us; namely, Jackson Coca-Cola Bottling Co. v. Grubbs, 143 Miss. 590, 108 So. 732, and Nehi Bottling Co. v. Thomas, 236 Ky. 684, 33 S. W. (2d) 701.

In the case of Jackson Coca-Cola Bottling Co. v. Grubbs, it was shown to us that a bottle of Coca-Cola was purchased from Burnham. It was attempted to be shown in that case that the defendant company was the only one selling Coca-Cola in that territory and in that town, but, as disclosed by the opinion, the effort was unsuccessful, it having been shown that the Coca-Cola was bottled, sold, and distributed by other plants, and sold on trains, and the court there held that, under this state of the record, the appellee's testimony had not met the burden

of proof by showing that the bottle of Coca-Cola containing the glass was manufactured by the appellant company.

In the case of Nehi Bottling Co. v. Thomas, a Kentucky case, the evidence was only to the effect that the bottle of Coca-Cola came off the Nehi truck, without any effort, so far as the record indicates, to show any connection between the Nehi Bottling Company and the retail dealer or consumer. In fact, the dealer testified that he did not know McNutt, the owner of the plant, and had never purchased any products from that plant. This brief analysis of these two cases demonstrates that the cases in nowise assist the appellant in his contention that the evidence we have detailed is insufficient to connect the Curtiss Candy Company with the bar of candy in question.

In the case of Rainwater v. Coca-Cola Bottling Co., 131 Miss. 315, 95 So. 444, this court followed and reannounced the view as given in the case of Jackson Coca-Cola Bottling Co. v. Chapman, 106 Miss. 864, 64 So. 791, wherein this state was aligned with other courts, holding that a manufacturer or bottler of beverages impliedly warrants that the beverages manufactured or bottled by him are wholesome and fit for human consumption, and is liable to a consumer for damages suffered by reason of drinking an unwholesome beverage manufactured or bottled by him, although it was purchased by the consumer from a middleman, and not direct from the manufacturer or bottler.

The basis of liability in such a case as this is on the breach of an implied warranty by the manufacturer in favor of the consumer who uses for food and takes into his body poisonous or injurious matter existing in the manufactured product. The liability is not in tort, and does not proceed upon the theory of negligence. In the case before us, we have, according to the evidence, an original package bearing the trade-name adopted by the Curtiss Candy Company, as admitted by it. It is a package of candy for human consumption, intact, and the

smooth chocolate covering intact; that the appellee proceeded to eat it, and there was glass in it. There is no way by which glass could have been introduced into the inner part of this candy bar except by the willful and wrongful act of a miscreant, unless the glass was in the bar of candy when it left the factory. We cannot assume or presume wrongdoing. We have here a case wherein there is a product widely advertised; in the course of a year, perhaps, a half of a billion of bars of this product, selling for five cents a bar, are scattered over this country, are being sold under the trade-name ''Baby Ruth,'' and manufactured by the Curtiss Candy Company. It is a case of a sealed package where there is no opportunity for examination from the time it leaves the manufacturer until it reaches the hands of the consumer. Of course, the glass therein was not visible, and, if any other person than the manufcturer had placed the glass in the bar, of necessity it would have been melted, the glass placed within the bar, then remoulded, and recovered with chocolate. This is wild conjecture. Prima facie, then, when a manufacturer adopts a trade-name for an article and puts it upon the market to be used by human beings as food, as to all hidden imperfections therein the consumer must be deemed to have relied on the care of the packer or manufacturer, or the warranty which is held to be implied by the latter. See 11 R. C. L. p. 1124, section 29. Prima facie, then, when an article of food is sealed, and placed upon the market for human consumption, it is as though the consumer had bought directly from the manufacturer; and, when ordinarily and usually he places his name on the original package, and it is shown that the article was purchased as such, and is intact, then a case is made for the jury, and the jury are warranted in adopting the view that the article was manufactured as represented by the one

manufacturing it, unless and until the manufacturer shall offer evidence to the contrary.

Common sense must obtain in the rules of evidence as well as elsewhere in the law. If there were intermediate handlers of this particular bar of candy, wholesalers, jobbers, or others, it would be folly to say that they could have any knowledge of the contents of such sealed package. It is bought by the consumer upon his faith in the reputation of the manufacturer and that it bears the trade-name and the name of the manufacturer; and, although in this case the president of the candy company stated that other companies had attempted to adopt a similar name and to counterfeit a similar candy bar, attention is not called to any incident where any one had undertaken to adopt the name of this company or its trade-name, ''Baby Ruth;'' so that we are of the opinion that the jury was warranted in finding that this candy was in its orignial state from the factory, and contained glass, which was eaten by the consumer herein. The evidence does not tend to show that, after the candy left the factory, the glass got into it except by the wrongful act of some third person, which will not be presumed.

Affirmed.