892 So.2d 248 (2004)
Christopher BURCHFIELD, Appellant,
v.
STATE of Mississippi, Appellee.
No. 2002-KA-00261-COA.
Court of Appeals of Mississippi.
June 8, 2004.
*250 Jack R. Jones III, Southaven, attorney for appellant.
Office of the Attorney General by Billy L. Gore, attorney for appellee.
EN BANC.

MODIFIED OPINION ON MOTION FOR REHEARING[1]
SOUTHWICK, P.J., for the Court.
¶ 1. Christopher Burchfield was convicted by a circuit court jury of possession of precursor drugs with knowledge that the *251 drugs would be used to manufacture a controlled substance. On appeal, Burchfield alleges error in failing to suppress certain evidence, in failing to require the State to prove the composition of the drugs through laboratory analysis and expert testimony, in permitting a witness to testify as an expert about the manufacture of crystal methamphetamine, in overruling an objection to part of the State's closing argument, and in giving him the maximum sentence. Burchfield also complains that there is not sufficient evidence to support the verdict, or else the evidence is so weak as to require a new trial. We find no merit to these arguments and affirm.
¶ 2. An employee of a Walgreens drug store called the narcotics division of the Horn Lake Police Department. The employee said that two white men had just purchased a large quantity of over-the-counter cold medications containing ephedrine/pseudoephedrine. The employee said that the men were driving a silverish Cadillac, that it had an Arkansas license tag, and that they had left the store traveling westbound on a specific road. The dispatcher for the Horn Lake Police Department gave notice to all officers to be on the lookout for such a Cadillac.
¶ 3. One of the Horn Lake Police officers on patrol, Kevin Thomas, saw a Cadillac fitting the description given by the dispatcher. Officer Thomas stopped the vehicle as it was traveling on the road that the Walgreens employee had identified. The officer saw a Walgreens shopping bag on the back seat of the Cadillac while he was speaking to the driver. This shopping bag contained two boxes of ephedrine. The driver consented to Office Thomas's request to search the vehicle. Inside the passenger compartment and trunk were found approximately 864 unit dosages of ephedrine. The defendant, Christopher Burchfield, was the passenger in the car. Both Burchfield and the driver were arrested. Burchfield appeals from his conviction for possession of precursor drugs.

DISCUSSION

1. Admission of Evidence
¶ 4. The trial court denied Burchfield's motion to suppress the 864 unit dosages of ephedrine that were seized from the Cadillac. He argues that there was no probable cause for anyone to stop his car and later to search it. Burchfield contends that the driver of the Cadillac was not suspected of committing a traffic violation. There also was not in Burchfield's view any evidence that either of the men was involved in illegal activity. In his view, the evidence that was then discovered should have been suppressed as being the product of a stop made without probable cause.
¶ 5. The federal and state constitutions use similar language to protect a person from unreasonable searches and seizures. U.S. Const. Amend. IV & XIV; Miss. Const. art. 3, § 23. What is reasonable for an investigative stop and brief detention is different than what is required for an arrest. If the officer has "a reasonable suspicion, grounded in specific and articulable facts, that a person he encounters was involved in or is wanted in connection with a felony," an investigative stop of a suspect may be made. Floyd v. City of Crystal Springs, 749 So.2d 110, 114 (Miss.1999). Reasonableness is determined on a case-by-case basis. Id. at 115. We review de novo a trial judge's decision about reasonable suspicion and probable cause. Id. at 113.
¶ 6. Officer Thomas heard the dispatcher describe the Cadillac. Such notice and specific enough description of a vehicle will permit an investigatory stop. Tucker v. State, 403 So.2d 1271, 1273 (Miss.1981). *252 The stop itself was permissible. During the valid stop, the officer saw a Walgreens shopping bag on the back seat which contained ephedrine. The driver consented to a search of his car. The finding that the consent was voluntary is supported by the available evidence. No search warrant was needed. Luton v. State, 287 So.2d 269, 272 (Miss.1973).

2. Toxicologist or crime laboratory analysis
¶ 7. Burchfield alleges that some expert analysis was needed to establish the ingredients of the cold medicine. The State did not present any chemical analysis that it had caused to be performed on the pills that were taken from the vehicle. Instead, a witness read to the jury the label on the packages of the pills. The label contained the ingredients of these medications. One of the ingredients was ephedrine. The trial judge admitted the evidence.
¶ 8. The "admissibility and relevancy of evidence are largely within the discretion of the trial court and reversal may be had only where that discretion has been abused." Johnston v. State, 567 So.2d 237, 238 (Miss.1990). A judge has discretion, but that flexibility must be exercised within constitutional constraints and the rules of evidence adopted for state court practice.
¶ 9. The Mississippi Supreme Court has in three precedents addressed the rules regarding chemical analysis of criminal evidence. We will discuss each. In one appeal, the defendant had been found guilty of selling cocaine. Barnette v. State, 481 So.2d 788, 789-91 (Miss.1985). A certificate of analysis demonstrating that the substance was actually cocaine was introduced into evidence over objection. Id. at 790. The analyst who performed the tests did not testify. The Court found error. An element of the offense that must be proven is that a controlled substance was being sold. "To allow the certificate of analysis to be admitted without the accompanying testimony of the analyst who prepared the certificate... violates the defendant's right of confrontation." Id. at 792.
¶ 10. A more recent case also dealt with the sale of cocaine. Kettle v. State, 641 So.2d 746, 747 (Miss.1994). There, testimony was obtained from a person who worked at the state crime laboratory, but it was not the person who conducted the test that was described in the lab report. Id. The trial court permitted introduction of the evidence as a business record. M.R.E. 803(6). On appeal, the Supreme Court reversed in reliance largely on Barnette:
When the Sixth Amendment right to confrontation arises, the ultimate question is whether hearsay evidence offered qualifies under a firmly rooted hearsay exception. If so, it may be admitted despite a claimed Sixth Amendment right to confrontation objection. Today we are not required to go beyond the facts of this case, and we hold that here the defendant was entitled to have the person who conducted the test appear and testify in person.
Kettle, 641 So.2d at 750 (citations omitted). The Court did not clarify whether the 803(6) business records exception itself was not "firmly rooted" or whether on these facts there was a confrontation defect. Id. at 750. Justice Banks discussed in his concurring opinion that the exclusion of the use of reports in criminal cases applied only to those prepared in anticipation of litigation; other business records had sufficient indicia of trustworthiness. Id. at 750-51. The majority did not discuss the validity of Justice Banks' observations. Neither do we, for reasons we will note.
*253 ¶ 11. One final Supreme Court precedent dealt with a witness who sponsored the crime laboratory report who was not the person who conducted the test. Crisp v. Town of Hatley, 796 So.2d 233 (Miss.2001). On appeal, the Court found admission of the crime report to be error.
¶ 12. These three precedents set parameters for proving the chemical composition of evidence. Burchfield contends that Barnette, Kettle, and Crisp prevent a conviction for possession or sale of a controlled substance without a chemical analysis of the substance and also the testimony of the person who conducted the test. The reason is the Sixth Amendment right to confront witnesses.
¶ 13. Burchfield objected to the admission of the pills and to the reading to the jury of the label on the pill bottles. This is the objection made by Burchfield's counsel:
With regards to the introduction of these boxes, obviously in chambers prior to trial we discussed several issues and also it was discussed how I felt that they had to prove this with a toxicologist. Likewise, that is also an objection; that this is not relevant or admissible until they have a valid, scientific proof through toxicology.
We know that Burchfield argued that a toxicologist must testify, but whether that was because of general hearsay arguments or because of the Sixth Amendment is unknown. The motion to suppress that is in the record solely addresses search and seizure issues. The Supreme Court has found that only an objection based on the confrontation clause will compel that hearsay evidence be admitted through a "firmly rooted exception." That objection must be made contemporaneously at trial in order to preserve the argument for appeal. Kettle, 641 So.2d at 750; Logan v. State, 773 So.2d 338, 346 (Miss.2000) ("Logan's objections at trial were specifically made on the grounds of hearsay and lack of authentication, and never on Sixth Amendment confrontation clause grounds"; confrontation issue therefore waived under Kettle.)
¶ 14. The conversation in chambers was not recorded. We are unable to determine what occurred. It would only be speculation that this objection was based on the Sixth Amendment right of confrontation. Burchfield could have repeated his objection on the record, or taken other steps to preserve the issue. E.g., M.R.A.P.10(c) (supplementation of record even based on recollections).
¶ 15. Since we cannot determine that Burchfield raised a Sixth Amendment issue, we are not limited to determining if the evidence was admissible under a "firmly rooted exception" to the hearsay rules. If there is an exception that clearly would have permitted the admission of this evidence in a civil case, the Sixth Amendment is not a factor in this particular criminal case.
¶ 16. The State has argued that the bottle label constitutes a business record. M.R.E. 803(6). We need not resolve that today, since even if it was, the evidence was not properly authenticated. Such evidence must be authenticated "by the testimony of the custodian or other qualified witness or self-authenticated pursuant to Rule 902(11)." M.R.E. 803(6). That latter rule requires that a records custodian provide a certificate. Just who that would be is hard to state regarding these bottle labels. Regardless, the proper method to authenticate business records was not followed in this case.
¶ 17. Other jurisdictions have dealt with using labels of products without case-specific lab analysis. The results have been mixed and have depended in part of the *254 specific state rules of evidence. See Ledford v. State, 239 Ga.App. 237, 520 S.E.2d 225, 228 (1999) (label from paint can inadmissible to prove that the paint contained the chemical toluene; court noted that other states disagree.)
¶ 18. What we find persuasive is that the Rules of Evidence are intended not to be arbitrary restrictions but instead are to seek "fairness in administration, elimination of unjustifiable expense and delay, and promotion of growth and development of the law of evidence to the end that the truth may be ascertained and proceedings justly determined." M.R.E. 102. There is a residual hearsay exception that seems tailored to the present circumstance:
Other Exceptions. A statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence. However, a statement may not be admitted under this exception unless the proponent of it makes known to the adverse party sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it, his intention to offer the statement and the particulars of it, including the name and address of the declarant.
M.R.E. 803(24). This common sense exception provides that if evidence has equivalent reliability to other kinds of hearsay that are admissible, then that evidence also is admissible under certain guidelines. Labels on pill bottles made in the normal process of nationwide manufacturing and distribution by an established pharmaceutical company, have substantial indicia of trustworthiness. Indeed, the evidence was that both the Walgreens drug store, and equally importantly, the co-indictees in this case, relied solely on those labels in ordering their affairs. The drug store was willing to sell, and those charged with the crime were willing to buy and then undertake the hazards of using this product to manufacture an illegal substance. Federal regulations require that the package of drugs have a label that describes quantity and contents. 21 U.S.C. § 352(e). Failure to comply is a violation of federal law. Some other courts have found that labels are trustworthy and admissible since they are generally relied upon by consumers of the product. In re Michael G., 19 Cal.App.4th 1674, 24 Cal.Rptr.2d 260, 264 (1993). That is our conclusion as well.
¶ 19. We conclude that a court does not have to ignore the trustworthiness that others find in the label. This bottle label has "equivalent circumstantial guarantees of trustworthiness" to those that exist in other hearsay exceptions. Rule 803(24)'s procedural requirement to give notice to the opposing party that such evidence will be offered was met. Indeed, there was a suppression hearing prior to trial that dealt with admissibility. We do not know whether a Sixth Amendment objection was made, but we do know about the defense pre-trial effort to prevent admission of the evidence. There certainly was notice of the use of this evidence.
¶ 20. Even with an applicable exception to hearsay, the label must be properly authenticated. The central rule is that authentication "as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent *255 claims." M.R.E. 901(a). The Rule then provides specific examples of means of authentication, but these are for "illustration only, and not by way of limitation...." M.R.E. 901(b). Among the items subject to self-authentication are "labels purporting to have been affixed in the course of business and indicating ownership, control or origin." M.R.E. 902(7). We accept that this rule specifically only permits self-authentication of a label in order to demonstrate the source of a product. This limit is reinforced by the comment to the rule, which cites a precedent in which that was the issue. M.R.E. 902(7) cmt., citing Curtiss Candy Co. v. Johnson, 163 Miss. 426, 141 So. 762 (1932).
¶ 21. As with the use of Rule 803(24) as the hearsay exception, we conclude that a common sense reading of the authentication requirements is that labels on products of established manufacturers who are engaging in nationwide distribution and are subject to federal regulation, are self-authenticating. The chain of custody of the bottles is not questioned. There is no reason to suspect that the label is not what it purports to be, and no reason to believe that it was affixed by someone other than the stated manufacturer. The labels were self-authenticating.
¶ 22. The evidence was properly admitted. This holding does not mean that if a Sixth Amendment confrontation clause objection is made in other prosecutions, that labels may be used to prove the contents of containers. What is needed for use of hearsay over such a objection is a firmly rooted exception, which the residual hearsay exception is not, or a showing that the hearsay has distinct guarantees of trustworthiness. Idaho v. Wright, 497 U.S. 805, 817-18, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990). Then the salient issue would be whether the labels are a business record, eligible as a firmly rooted exception since the labels were not made for litigation, and admissible under Rule 803(6) if properly authenticated.
¶ 23. What we have implicitly concluded, and now state explicitly, is that there is no plain error in the failure either to make a Sixth Amendment objection or at least to have such an objection clearly preserved on the record. A reversal and retrial presumably would lead to a chemical analysis of the contents of some of the bottles to be made and offered as proof that the labels are correct. There is no fundamental right to have every objection that might have been successful to be made, particularly when that objection would only raise a defect that the prosecution might then be able to rectify through other forms of evidence, including a quick lab test. This objection was not the fulcrum on which the defendant's certain acquittal turned.

3. Testimony of Johnny Cox
¶ 24. Burchfield complains of the admission of Johnny Cox's testimony as an expert in crystal methamphetamine. Cox's testimony explained the steps in making crystal methamphetamine. Burchfield argues that this testimony was prejudicial since he was not on trial for possessing or manufacturing crystal methamphetamine.
¶ 25. Evidence must be relevant for the court to admit expert opinion testimony. Oughton v. Gaddis, 683 So.2d 390, 395 (Miss.1996). Burchfield argues that Cox's testimony did nothing but create speculation against him. In general, testimony must help to the trier of fact resolve an issue. Bower v. Bower, 758 So.2d 405, 413 (Miss.2000). Cox's testimony revealed that ephedrine extracted from over the counter cold medications is used as a key ingredient to make crystal methamphetamine. Since Burchfield bought 864 unit dosages of ephedrine and since Burchfield *256 stated that he and the driver of the Cadillac intended to resell the ephedrine, it could be inferred that this ephedrine was going to be used to produce crystal methamphetamine. There was no error in allowing Cox to testify as to the production of crystal methamphetamine.

4. Closing Argument
¶ 26. Burchfield also alleges error when the trial court overruled his objection to the State's closing argument. The State inferred that Burchfield knew that the pills taken from the Cadillac were going to be used to produce crystal methamphetamine. Burchfield argues that this was not supported by the evidence since there was never any evidence presented at trial proving his intent to manufacture crystal methamphetamine.
¶ 27. Prosecutor can argue facts only if they are in the evidence or can be inferred. Tubb v. State, 217 Miss. 741, 744, 64 So.2d 911, 912 (1953). There was a reasonable inference that Burchfield knew that the purpose of purchasing the ephedrine was to manufacture crystal methamphetamine. The State presented evidence that Burchfield and the driver purchased 864 unit dosages of ephedrine from several stores within 24 minutes; Burchfield stated to the police his intent was to resell the ephedrine. There was further evidence that it was not complicated to extract the ephedrine from the cold medication. The prosecutor's comments were reasonable inferences.

5. Sentencing
¶ 28. Finally, Burchfield complains about the sentence of five years, which was the maximum sentence for the crime. He argues that his case should be remanded for re-sentencing accompanied with an instruction to the judge to take into consideration the facts that he had never been convicted of a felony and that he was only twenty-three years old. Burchfield argues that the sentence he was given violates the federal constitution because it is cruel and unusual punishment.
¶ 29. There is no abuse of discretion by a trial court when the sentence imposed is within the statutory limits. Edwards v. State, 615 So.2d 590, 597 (Miss.1993). "When a threshold comparison of the crime committed to the sentence imposed leads to an inference of `gross disproportionality,' the proportionality analysis of Solem v. Helm, 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983), is used." White v. State, 742 So.2d 1126, 1135 (Miss.1999). We do not find a gross disproportionality when we compare Burchfield's crime with the five year sentence he was given.
¶ 30. THE JUDGMENT OF THE CIRCUIT COURT OF DESOTO COUNTY OF CONVICTION OF POSSESSION OF OVER 250 DOSAGE UNITS OF EPHEDRINE AND SENTENCE OF FIVE YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AND FINE OF $1,000 IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO DESOTO COUNTY.
THOMAS, LEE, MYERS AND GRIFFIS, JJ., CONCUR. IRVING, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY KING, C.J., AND BRIDGES, P.J. CHANDLER, J., NOT PARTICIPATING.
IRVING, J., dissenting.
¶ 31. Brian Bradley was a supervisor with the narcotics division of the Horn Lake Police Department. He received a phone call from a clerk at Walgreens who stated that two white men were in the *257 store buying over-the-counter cold medications that contained large amounts of ephedrine/pseudoephedrine. Burchfield, who was one of those men, was arrested, charged and convicted of possession of precursor drugs with knowledge that the drugs would be used to manufacture a controlled substance.
¶ 32. An essential element of the crime of possession of precursor drugs is that the substances possessed are indeed drugs which can be used to manufacture a controlled substance. Ephedrine is a drug used in the manufacture of crystal methamphetamine which is a controlled substance.
¶ 33. As proof that Burchfield did in fact possess ephedrine, the State  over Burchfield's objection that the testimony of a toxicologist and proof through toxicology was required  introduced the ingredient labels from the cold medications. The labels indicated that the medications contained the drug ephedrine.
¶ 34. Upon this proof, the majority affirms Burchfield's conviction and sentence. With respect for my colleagues in the majority, I am compelled to dissent, for I believe that, upon the proof presented, Burchfield was denied his constitutional right to due process as well as his Sixth Amendment right of confrontation.
¶ 35. It is beyond dispute in the jurisprudence of this state that the State, in criminal prosecutions, has an affirmative duty to prove beyond a reasonable doubt each element of the crime charged. The question then, in this case, is whether the ingredient labels alone were sufficient to prove beyond a reasonable doubt that the substances possessed by Burchfield were indeed ephedrine. I believe the holding in Crisp v. Town of Hatley, 796 So.2d 233 (Miss.2001); Kettle v. State, 641 So.2d 746 (Miss.1994); and Barnette v. State, 481 So.2d 788 (Miss.1985), answers the proffered question in the negative. Although each of these cases is briefly discussed by the majority, I find it necessary to discuss them in more detail because, based on my analysis of them, I find that they are significantly more material to the issue before us than does the majority.
¶ 36. In Barnette, the defendant was convicted of selling cocaine. Id. at 789. During the trial, over the defendant's objection, the State was allowed to introduce, pursuant to Mississippi Code Annotated section 13-1-114, the certificate of analysis indicating that the substance sold was indeed cocaine.[2] The analyst who conducted the tests did not testify. Id. at 790. The defendant contended that admission of the certificate, without the accompanying testimony of the analyst who performed the analysis, violated his Sixth Amendment right to confront witnesses against him. Id. Neither the defendant nor the State had moved prior to trial for the court to require the analyst to testify.
*258 ¶ 37. In resolving the issue, the Mississippi Supreme Court made the following pronouncements:
We have held that due process requires the State to prove each element of the offense charged beyond a reasonable doubt.
The United States Supreme Court has expressly held that the "Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged."
[A]n essential element of the crime of selling a controlled substance is that the substance sold is indeed a controlled one.... This must be determined by a chemical analysis. To allow, without the consent of the defendant, this essential element to be proven solely by a certificate of the analyst impermissibly lessens the constitutionally required burden which is on the state.

Id. at 791 (emphasis added) (citations omitted).
To allow the certificate of analysis to be admitted without the accompanying testimony of the analyst who prepared the certificate ... violates the defendant's right of confrontation.
The certificate of analysis may be admitted as substantive evidence of the facts therein along with the testimony of the analyst who prepared the certificate.
The certificate may be admitted as substantive evidence of the facts therein without the testimony of the analyst only if the defendant consents to such and waives his right to confront that witness in a pretrial agreement with the prosecuting attorney.
Id. at 792 (emphasis added).
¶ 38. Kettle involved the sale of cocaine where the court was confronted with the admissibility of a laboratory report introduced by a person who did not conduct the drug analysis on the substance which was the subject of the report. Kettle, 641 So.2d at 747. The defendant filed a motion in limine to prevent the use of the report at trial. In his motion, the defendant alleged that, in addition to concerns of reliability, use of the report would violate his Sixth Amendment right of confrontation. Id. The motion was overruled, and the report was introduced pursuant to the business records exception, Rule 803(6) of the Mississippi Rules of Evidence. Id. The report "contained the results of the tests performed on the substance that was purchased." Id.
¶ 39. On appeal, the Mississippi Supreme Court quoted extensively from Barnette v. State, 481 So.2d 788, 791 (Miss.1985), and then concluded with the following:
When the Sixth Amendment right to confrontation arises, the ultimate question is whether hearsay evidence offered qualifies under a firmly rooted hearsay exception. If so, it may be admitted despite a claimed Sixth Amendment right to confrontation objection. Today we are not required to go beyond the facts of this case, and we hold that here the defendant was entitled to have the person who conducted the test appear and testify in person.
Kettle, 641 So.2d at 750 (citations omitted). The court did not explain why the 803(6) business records exception was not a "firmly rooted" exception to the admission of hearsay. Justice Banks, in a concurring opinion, expressed his understanding of what the majority held. In his view, the majority was only excluding the use of certificates or reports, in criminal cases, that were prepared in anticipation of litigation.
*259 ¶ 40. In Crisp, the Mississippi Supreme Court was again confronted with a question as to the legality of the admissibility of a crime lab certificate of analysis without the accompanying testimony of the analyst who performed the chemical analysis. In resolving the issue, the court yet again quoted extensively from Barnette and observed that the defendant had not given his pretrial consent to the admission of the certificate of analysis without the testimony of the analyst. Additionally, the court noted the absence of any indication that the defendant had waived his right to confront the analyst at trial. In concluding that the trial court had erred in allowing the admission of the certificate, the court made the following pronouncement:
This Court holds that the circuit court erred in allowing the certificate of analysis to be admitted without the accompanying testimony of the analyst who prepared the certificate. This allowed the prosecution to put on its case without meeting its burden of proving beyond a reasonable doubt that Crisp possessed marijuana.

Crisp, 796 So.2d at 236 (emphasis added).
¶ 41. The majority apparently interprets Barnette, Kettle, and Crisp as authority for the proposition that, absent a Sixth Amendment objection, the State's burden  to prove that the substances possessed by Burchfield were indeed ephedrine  was satisfied by the introduction of the ingredient labels. I do not interpret the holdings of these cases so narrowly. These cases also stand for the proposition that proof of the identity of a contraband substance, via a certificate only, constitutes a denial of due process and does not meet the constitutional burden placed on the State that it prove each element of the charge against a defendant beyond a reasonable doubt.
¶ 42. Barnette and Crisp clearly hold that the prosecution has an affirmative duty to prove as a part of its case-in-chief  by the use of the testimony of the analyst who prepared the certificate  that the substance in question is in fact a controlled substance. I see no substantive difference between a certificate of analysis, indicating the identity of a substance tested, and a label, affixed to a bottle of medication, which identifies the ingredients in the medication.
¶ 43. By offering only the ingredient labels, "the prosecution [was able] to put on its case without meeting its burden of proving beyond a reasonable doubt that [Burchfield] possessed [ephedrine]". Crisp, 796 So.2d at 236. "To allow, without the consent of [Burchfield], [an] essential element [that the substance possessed was ephedrine] to be proven solely by an [ingredient label] impermissibly lessens the constitutionally required burden which is on the state." Barnette, 481 So.2d at 791.
¶ 44. But even if a proper interpretation of the holding in Barnette and Crisp is that a Sixth Amendment objection must be lodged before the State is required to produce the chemist or technician who performed the analysis that identified the substance as a prohibited drug, I am of the opinion still that it was error to admit the ingredient labels without producing someone who could testify that the bottles of medication did in fact contain ephedrine as indicated on the labels. I believe error occurred because, in my view, Burchfield's counsel made a sufficient Sixth Amendment objection. This is the objection that was made during the trial:
With regards to the introduction of these boxes, obviously in chambers prior to trial we discussed several issues and also it was discussed how I felt that they had to prove this with a toxicologist. *260 Likewise, that is also an objection; that this is not relevant or admissible until they have valid, scientific proof through toxicology.
¶ 45. I cannot accept the majority's assessment that a right-of-confrontation-Sixth-Amendment objection is not clearly embraced within the quoted objection. What would be the rational deduction to draw from Burchfield's counsel's insisting that proof had to be made through a toxicologist? The answer seems clear enough to me. He was insisting on the right of cross-examination. In his motion for a new trial, Burchfield alleged, among other things, that the trial court erred in failing to require the State to prove, "by [a] toxicologist, the substance alleged in the indictment." If he was not insisting on his right to confront and cross-examine the toxicologist, why was he demanding his presence? Was it just to see the toxicologist or was it to ask him some questions?
¶ 46. While the trial court did not identify the evidentiary basis for admitting the ingredient labels, the majority finds that the labels were properly admitted under Rule 803(24) of the Mississippi Rules of Evidence.
¶ 47. Rule 803(24) is the so-called catch-all exception to the hearsay rule. It provides that statements, not specifically covered by any of the other hearsay exceptions, having equivalent circumstantial guarantees of trustworthiness may be admitted:
if the court determines that (a) the statement is offered as evidence of a material fact, (b) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts, and (c) the general purpose of these rules and the interest of justice will best be served by admission of the statement into evidence. However, a statement may not be admitted under this exception unless the proponent of it makes known to the adverse party sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it, his intention to offer the statement and the particulars of it, including the name and address of the declarant.
M.R.C.P 803(24).
¶ 48. Interestingly, the majority does not attempt to explain how prerequisite (b) of the rule was satisfied. As noted in the rule, before the statement may be admitted, the trial court must first determine that "the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts." Id. The State owns a crime laboratory, and one of its primary functions is to perform chemical analyses of suspected contraband substances. How can it be said that the labels on the cold medications is more probative of the identity of the ingredients contained in the medications than a chemical analysis done by a chemist in the Mississippi Crime Laboratory. They may be as probative but certainly not more probative unless one is to assume that the chemists at the crime laboratory are totally incompetent or the crime laboratory does not possess the necessary equipment to properly perform chemical analyses.
¶ 49. Additionally, the majority's discussion of the rule's requirement  that the proponent of the statement must make known to the adverse party the proponent's intention to offer the statement and the particulars of it, including the name and address of the declarant  is flawed. To suggest, as does the majority, that Burchfield's filing of the motion to suppress satisfies this requirement is to assume certain facts that are not borne out by the record before us.
*261 ¶ 50. The record does not indicate in the least that Burchfield's motion to suppress was in response to notification by the State that it intended to offer the labels, in lieu of a chemical analysis and live testimony from the person performing the analysis, to prove the identity of the substances seized from Burchfield. In fact, based on the contents of the motion, the only logical deduction to make concerning the reason for Burchfield's filing of the motion is his belief that the police did not have probable cause to stop him and search the vehicle in which he was riding.[3] It was his theory that the seizure of the cold medications was a violation of the Fourth Amendment prohibition against unreasonable searches and seizures. Any marginally competent defense lawyer would have made the motion to suppress even without the State have given notice that it planned to introduce the medications into evidence, for it would be obvious that, in the absence of the contraband, there would be no case.
¶ 51. In summary, I am of the opinion that this case should be reversed because (1) the State failed to carry its burden of proof, as required by Barnette and Crisp, to prove by competent and proper evidence an essential element of the charge, i.e, that the substance possessed by Burchfield was indeed ephedrine, (2) the ingredient labels were not properly admitted pursuant to Rule 803(24) because the requirements of that rule were not met, and (3) Burchfield never waived his Sixth Amendment right of confrontation; therefore, under the holding of Barnette, Kettle, and Crisp, it was error to admit the ingredient labels as proof that he possessed ephedrine.
¶ 52. For the above and foregoing reasons, I would reverse and remand this case for a new trial because of the erroneous admission of the ingredient labels.
KING, C.J., AND BRIDGES, P.J., JOIN THIS SEPARATE WRITTEN OPINION.
NOTES
[1] The motion for rehearing is granted, the former opinions are withdrawn, and these opinions are substituted.
[2] Mississippi Code Annotated section 13-1-114, which allowed the admission of the certificate as evidence, was repealed July 1, 1991. That section read:

(1) In the prosecution for a criminal offense where testimony of an analysis of a control substance, as defined in sections 41-29-113, 41-27-117, 41-29-119 and 41-29-121, by a physician, chemist or technician is called for, the certificate of such person shall be admissible as evidence of the facts stated therein and of the results of the analysis referred to therein provided that:
(a) The analysis is performed in a court-approved laboratory; and
(b) The certificate of analysis is duly attested to by the physician, chemist or technician performing said analysis.
(2) On motion of any party in any misdemeanor or felony case, and within a reasonable time prior to trial, the court may require the official making the analysis to appear as a witness.
[3] The gravamens of the motion to suppress were (1) no probable cause existed for the stop of the vehicle by law officers and no valid consent was obtained for the search, (2) no warrants were in existence for the arrest and stop/detention of the defendant, and (3) no search warrant was in existence for the search of the vehicle.